# IN THE UNITED STATES DISTRICT COURT FOR THE

# EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>  Plaintiffs,<br><br>  v.<br><br>SAN JOAQUIN VALLEY RAILROAD COMPANY, et al.,<br><br>  Defendants. | NO. 1:08-CV-01086-AWI-SMS<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT<br><br>(Document #35) |

This is an action for breach of contract and declaratory relief by plaintiff BNSF Railway Company ("BNSF") against defendants Tulare Valley Railroad Company ("TVRR") and San Joaquin Valley Railroad Company ("SJVR"), (collectively, "Defendants"). In the instant motion, SJVR and TVRR seek summary judgment pursuant to Rule 56. For the reasons stated below, SJVR and TVRR's motion for summary judgment is denied.

## I. HISTORY

On November 1992, BNSF's predecessor, the Atchison Topeka and Santa Fe Railway Company ("ATSF") and TVRR entered into a contract, ("1992 Contract"), which authorized

BNSF to set "through-rates"[1] for interchange[2] of rail traffic for 25 years.  Under the 1992 Contract, TVRR promised to concur in those rates so long as TVRR received the divisions of revenue called for by paragraph 31 of the 1992 Contract.  Paragraph 31 provided that at the end of each calendar year, commencing with the year-end 1993, BNSF would determine whether there had been a percentage increase or decrease in the level of its joint through-rates on movements to or from the stations listed in Table 1[3].  Paragraph 31 specified that BNSF was to notify the Defendants of the results of this determination and any percentage change was to be applied to the division set forth in Table 1.  Paragraph 31 also provided that "Nothing in this agreement shall preclude [BNSF] and [defendants] from negotiating and agreeing to different divisions than those specified in Table 1 for contract movement to or from any of the aforementioned stations."  Paragraph 16 of the contract provided that "the agreement shall be amended or modified only by written agreement signed by the parties."

BNSF asserts that in 1994, BNSF and SJVR entered into a letter of agreement ("1994 Letter of Agreement")[4], in which the parties agreed to a new division of revenue arrangement.  BNSF contends that the 1994 Letter of Agreement provided that the through-rates would remain

---

[1] BNSF defines "through-rates" as rates set to allow shippers to ship from one location to another without having to piece together multiple carriers' routes and rates.  A single through-rate can span multiple carriers' lines, but only one rate – the through-rate – is quoted and charged for transportation services provided by two or more carriers.

[2] BNSF defines "interchange" as the transfer of freight cars between railroad companies.

[3] Table 1 in the 1992 Contract specifies the compensation defendant would receive (i.e. the division of revenue) on a per car basis for rail movements between designated stations and the point of interchange with BNSF.

[4] BNSF asserts that after the execution of the 1992 Contract, TVRR entered into a "Services Agreement" with SJVR.  Pursuant to that Services Agreement, SJVR acted as TVRR's agent for rail operations on the lines purchased from ATSF.  BNSF also contends that besides being TVRR's agent, SJVR conducted its own rail operations.  SJVR and TVRR continued their agency relationship until 1999, when SJVR purchased most of TVRR's rail lines ("1999 Sale").  BNSF asserts that TVRR retained ownership of one of its lines but pursuant to a second Services Agreement with SJVR, the line was to be operated by SJVR.  BNSF contends that in connection with the 1999 Sale, TVRR assigned its rights and obligations under the 1992 Contract to SJVR.  BNSF asserts that the already in place 1994 Letter of Agreement became the operative contract between BNSF and SJVR with respect to their division of revenue arrangement.

2

constant. Paragraph 7(a) of the 1994 Letter of Agreement provided that: "[BNSF] shall pay [SJVR] the per car charges (hereinafter "Switching Absorption") as shown in Table 1 for each loaded revenue car interchanged between [BNSF] and [SJVR] on freight shipments originating on or destined to facilities located on branch line served by [SJVR]." Paragraph 11 of the Letter Agreement provided that the rates to Table 1 stations[5] would remain in effect from year to year unless canceled. BNSF argues that BNSF and SJVR negotiated and agreed to the fixed rates specified in Table 1 of the 1994 Letter of Agreement as opposed to the yearly division of revenue adjustments (based on increases or decreases in BNSF's through-rates) arrangement provided by the 1992 Contract.

On June 5, 2008, SJVR wrote to BNSF claiming that BNSF had breached the 1992 Contract by not escalating SJVR's revenues on a yearly basis since 1992. BNSF maintains that the parties had agreed since 1992 to not adjust revenues on a yearly basis. Furthermore, BNSF asserts that SJVR benefitted from the agreement not to adjust the revenues because since 1992, BNSF's through-rates had declined. BNSF asserts that from 1992 through 2006, the agreement not to adjust revenue[6] resulted in excess payments to SJVR of an amount estimated to be $2.5 million dollars.

**PROCEDURAL BACKGROUND**

On July 25, 2008, BSNF filed a complaint in this court against TVRR and SJVR. BNSF's first claim seeks a declaration of its rights and obligations under the 1992 Contract specifically relating to the division of revenue arrangement between BNSF and SJVR for rail traffic. BNSF's second claim alleges a breach of the 1992 Contract.

On September 2, 2008, SJVR filed a counter-claim alleging breach of contract and

---

[5]Table 1 stations and rates referenced in the 1994 Letter of Agreement are nearly identical to those from the 1992 Contract with the exception that the Visalia station's division of revenue increased from $315 to $395.

[6]With the exception that in 1996, the parties agreed to an across the board 4% increase to all of the Table 1 rates. This 4% adjustment does not appear to be in dispute by the parties.

seeking declaratory relief. SJVR contends that BNSF materially breached the 1992 Contract and as a result SJVR is no longer obligated to concur in the rates set by BNSF.

On June 5, 2009, SJVR and TVRR[7] filed a motion for summary judgment.

On June 19, 2009, BNSF filed an opposition to SJVR and TVRR's motion. BNSF argues *inter alia* that Defendants' motion is premature because BNSF has not been afforded the opportunity to conduct necessary discovery.

On June 29, 2009, SJVR and TVRR filed a reply brief. The court took the matter under submission on July 1, 2009 without oral argument.

## LEGAL STANDARD

"Rule of Civil Procedure 56(f) provides a device for litigants to avoid summary judgment when they have not had sufficient time to develop affirmative evidence." Burlington Northern and Santa Fe. R.R. Co. v. The Assiniboine and Sioux Tribes of the Fort Peck Indian Reservation, Montana, 323 F.3d 767, 773-74 (9th Cir. 2003). Rule 56(f) reads:

> When Affidavits are Unavailable. Should it appear from the affidavit of a party opposing the motion that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

The Ninth Circuit has explained that in order to prevail on a 56(f) motion, the party "must show (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are 'essential' to resist the summary judgment motion." State of California v. Campbell, 138 F.3d 772, 779 (9th Cir. 1998). "In making a Rule 56(f) motion, a party opposing summary judgment 'must make

---

[7]TVRR argues that BNSF's claims against it fail as a matter of law because BNSF has no contract with TVRR. TVRR claims that it assigned all of its rights and obligations under the 1992 Contract to SJVR in 1998 when it sold most of its lines. However, on November 28, 2008, the court dismissed this argument and found that based on BNSF's allegations, TVRR's purported contractual breaches (dating back to 1992) occurred during a period of time when TVRR still owned and operated at least one rail line and when TVRR still owed contractual obligations to BSNF under the 1992 Contract.

clear what information is sought and how it would preclude summary judgment." Margolis v. Ryan, 140 F.3d 850, 853 (9th Cir. 1998), citations omitted.  The burden is on the party seeking to conduct additional discovery to put forth sufficient facts to show that the evidence sought exists. See Employers Teamsters Local Nos. 175 & 505 Pension Trust Fund v. Clorox Co., 353 F.3d 1125, 1129-30 (9th Cir. 2004).

Factors courts have considered in granting motions pursuant to Rule 56(f) include: (1) a summary judgment motion made early in the litigation before relevant discovery could be completed; (2) discovery having been stayed by court order; (3) the case involves complex facts requiring additional discovery; (4) the material facts are within the exclusive knowledge of the moving party; (5) discovery requests are currently outstanding to the moving party; and (6) the motion raises new and unanticipated issues.  See Schwarzer, Tashima, Wagstaffe, Cal. Practice Guide: Fed. Civ Pro.  Before Trial, §14:115 (The Rutter Group 2005), citing Garrett v. San Francisco, 818 F.2d 1515 (9th Cir. 1987), DiMartini v. Ferrin, 889 F.2d 922 (9th Cir. 1989), and Weir v. Anaconda Co., 773 F.2d 1073 (10th Cir. 1985)).  District courts have the discretion to deny further discovery "if the movant has failed diligently to pursue discovery in the past, or if the movant fails to show how the information sought would preclude summary judgment." Clorox Co., 353 F.3d at 1130; Cal. Union Ins. Co. v. Am. Diversified Sav. Bank, 914 F.2d 1271, 1278 (9th Cir. 1990).

However, when a summary judgment motion is filed "so early in the litigation, before a party has had any realistic opportunity to pursue discovery relating to its theory of the case, district courts should grant any Rule 56(f) motion fairly freely . . . [where] no discovery whatsoever has taken place, the party making a Rule 56(f) motion cannot be expected to frame its motion with great specificity as to the kind of discovery likely to turn up useful information, as the ground for such specificity has not yet been laid." Burlington Northern, 323 F.3d at 773-74.

## DISCUSSION

In this case, SJVR filed its summary judgment motion on June 5, 2009.  Pursuant to the

February 26, 2009 scheduling order, discovery does not close until November 30, 2009. There has been some limited discovery and BNSF asserts that it has not been afforded the opportunity to conduct necessary discovery. BNSF contends that the additional discovery will allow it to fully refute Defendants' motion. BNSF asserts that it intends to take several necessary depositions and is expecting further written discovery. By affidavit, BNSF asserts that the completion of discovery will shed light on the following facts:

 (1) Defendants reached agreement with BNSF on rates in every year from 1992 up to 2008 when SJVR purported to set rates unilaterally;

 (2) defendants breached the 1992 Contract in 2008 when BNSF was invoiced for rates that SJVR had unilaterally set;

 (3) BNSF never beached [sic] the 1992 Contract because the parties were contractually authorized to agree upon different divisions of revenue and pursuant to the 1992 Contract the parties came to such an agreement;

 (4) the parties' exchange of rate sheets documenting their agreement on rates;

 (5) the April 1, 1994 Letter of Agreement has governed the relationship since SJVR acquired TVRR's lines in 1999; and

 (6) SJVR's own invoices confirm and establish the parties' agreement to the absorbed switch charges in the 1994 Letter of Agreement.

See Second Hemming Aff. ¶37.

 BNSF contends that it will depose Defendants' representatives Sandy Franger ("Franger") (Vice-President of Contracts) on August 4, 2009, James Shefelbine ("Shefelbine") (SJVR's Vice-President of Marketing) on August 5, 2009, and Michael Van Wagenen ("Van Wagenen") (TVRR's President). Id. ¶¶38-41. BNSF asserts that Franger, who has responsibility for understanding the contractual relationship with BNSF, should further confirm the 1994 Letter of Agreement's applicability as well as BNSF's contractual compliance. Id. BNSF contends that Shefelbine has knowledge about the parties' course of dealings and communications over the

6

years. Id. BNSF asserts that during the last two years, Shefelbine has had extensive communications and dealings with BNSF regarding SJVR's compensation. Id. BNSF indicates that Van Wagenen will recount the circumstances surrounding the letter he received in 1994, in which BNSF informed both TVRR and SJVR that even though the through-rate revenues declined, Defendants' division of revenues would remain the same. Id. BNSF surmises that Van Wagenen should confirm that BNSF never breached the 1992 Contract. Id.

BNSF's proposals are not off-track and succeed in rasing some relevant legal issues. The depositions of Franger, Shefelbine, and Van Wagenen appear to be helpful in determining whether BSNF and the Defendants agreed upon a different division of revenue than the 1992 Contract's yearly adjustment division of revenue arrangement. The depositions may illuminate whether the parties intended for the 1992 Contract or the 1994 Letter of Agreement to govern the division of revenue. At this juncture, given BNSF's affidavit, the fact that discovery closes in 5 months, and considering the factual complexity of the case, the court believes that relief under Rule 56(f) is appropriate. Accordingly, BNSF's discovery request is sufficient to warrant delaying any summary judgment decision.

**ORDER**

Accordingly, SJVR and TVRR's motion for summary judgment is DENIED without prejudice to allow for discovery.

IT IS SO ORDERED.

**Dated:   July 27, 2009**          /s/ Anthony W. Ishii
                                    CHIEF UNITED STATES DISTRICT JUDGE