JAMES B. HICKS, SBN 109117
GARY W. PARK, SBN 173390
ALLISON H.W. MILLER, SBN 253007
HICKS | PARK LLP
824 Wilshire Boulevard, Suite 300
Los Angeles, CA 90017
Tel: (213) 612-0007 / Fax: (213) 612-0373
amiller@hicksparklaw.com

Attorneys for Defendant and Counterclaimant San Joaquin Valley Railroad Company, and Defendant Tulare Valley Railroad Company

Briggs and Morgan, P.A.
Timothy R. Thornton, MN Bar No. 109630 (admitted pro hac vice)
Paul J. Hemming, MN Bar No. 0346184 (admitted pro hac vice)
2200 IDS Center, 80 South Eighth Street
Minneapolis, MN 55402-2157
Tel: (612) 977-8400 / Fax: (612) 977-8650

Auchard & Stewart
Paul Auchard, Bar No. 060474
2377 W. Shaw, Suite 106
Fresno, CA 93711-3438
Tel: (559) 432-0991 / Fax: (559) 432-1025

Attorneys for Plaintiff BNSF Railway Company

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>Plaintiff,<br>v.<br><br>SAN JOAQUIN VALLEY RAILROAD COMPANY, et al.,<br><br>Defendants.<br>__________<br>AND RELATED COUNTERCLAIMS.<br>__________ | Case No. 1:08-CV-01086-AWI-SMS<br><br>**JOINT STATEMENT RE DISCOVERY DISAGREEMENT RE SJVR'S MOTION TO COMPEL FURTHER RESPONSES TO INTERROGATORIES AND DOCUMENT REQUESTS RE FUEL SURCHARGE COSTS**<br><br>Date: April 30, 2010<br>Time: 9:30 a.m.<br>Magistrate Judge Sandra M. Snyder<br><br>Trial Date: None |

Pursuant to Fed.R.Civ.P. 26 and 37 and Local Civil Rule 37-251, Defendant and counter-claimant San Joaquin Valley Railroad Company ("SJVR") and plaintiff and counterdefendant BNSF Railway Company ("BNSF") submit this Joint Statement re Discovery Disagreement, regarding SJVR's Motion to Compel Discovery which was filed on March 8, 2010.

# TABLE OF CONTENTS


**JOINT STATEMENT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I. **INTRODUCTORY STATEMENTS** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

A. **SJVR'S Introductory Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

B. **BNSF'S Introductory Statement** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

I. **BACKGROUND OF THE LITIGATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

II. **THE CURRENT DISCOVERY DISPUTE** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

III. **PARAGRAPH 31, UPON WHICH SJVR BASES FUEL SURCHAGE CLAIMS, DOES NOT INCLUDE FUEL SURCHARGES** . . . . . . . . . . . . . . . . . . . . . . . . 9

IV. **SJVR ADMITS FUEL SURCHARGES ARE NOT ENCOMPASSED BY THE 1992 CONTRACT** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

V. **BNSF HAS ALREADY PRODUCED ALL ARGUABLY RELEVANT FUEL SURCHARGE INFORMATION** . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

a. **BNSF already provided information regarding the fuel surcharges collected on shipments to or form Table 1 stations** . . . . . . . . . . . . . . . . . . . . . . . . . . 14

b. **SJVR already has what its damages expert professes to need** . . . . . . . . . . . . . . 18

VI. **COST INFORMATION IS EVEN LESS RELEVANT AND WELL BEYOND THE SCOPE OF PERMISSIBLE DISCOVERY** . . . . . . . . . . . . . . . . . . . . . . . . . 19

VII. **SJVR'S ARGUMENTS ARE SPURIOUS.** . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

II CONTENTIONS REGARDING SJVR's INTERROGATORIES . . . . . . . . . . . . . . . . . . . . 29

SJVR's INTERROGATORY NO. 13: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

BNSF's RESPONSE TO SJVR's INTERROGATORY NO. 13 . . . . . . . . . . . . . . . . . . . 29

SJVR's CONTENTIONS REGARDING INTERROGATORY NO. 13 . . . . . . . . . . . . . . 30

BNSF's CONTENTIONS REGARDING INTERROGATORY NO. 13 . . . . . . . . . . . . . . 31

SJVR's REPLY CONTENTIONS REGARDING INTERROGATORY NO. 13 . . . . . . . . 33

SJVR's INTERROGATORY NO. 14: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

BNSF's RESPONSE TO SJVR's INTERROGATORY NO. 14 . . . . . . . . . . . . . . . . . . . 34

SJVR's CONTENTIONS REGARDING INTERROGATORY NO. 14 . . . . . . . . . . . . . . 34

BNSF's CONTENTIONS REGARDING INTERROGATORY NO. 14 . . . . . . . . . . . . . . 35

SJVR's REPLY CONTENTIONS REGARDING INTERROGATORY NO. 14 . . . . . . . . 35

SJVR's INTERROGATORY NO. 15: .... 36
BNSF's RESPONSE TO SJVR's INTERROGATORY NO. 15. .... 36
SJVR's CONTENTIONS REGARDING INTERROGATORY NO. 15. .... 36
BNSF's CONTENTIONS REGARDING INTERROGATORY NO. 15. .... 38
SJVR's REPLY CONTENTIONS REGARDING INTERROGATORY NO. 15. .... 39
SJVR's INTERROGATORY NO. 16: .... 40
BNSF's RESPONSE TO SJVR's INTERROGATORY NO. 16. .... 40
SJVR's CONTENTIONS REGARDING INTERROGATORY NO. 16. .... 40
BNSF's CONTENTIONS REGARDING INTERROGATORY NO. 16. .... 41
SJVR's REPLY CONTENTIONS REGARDING INTERROGATORY NO. 16. .... 41

III. **CONTENTIONS REGARDING SJVR'S DOCUMENT REQUESTS**
SJVR's REQUEST NO. 1: .... 42
BNSF's RESPONSE TO SJVR's REQUEST NO. 1. .... 42
SJVR's CONTENTIONS REGARDING REQUEST NO. 1. .... 42
BNSF's CONTENTIONS REGARDING REQUEST NO. 1. .... 43
SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 1. .... 44
SJVR's REQUEST NO. 3: .... 45
BNSF's RESPONSE TO SJVR's REQUEST NO. 3. .... 45
SJVR's CONTENTIONS REGARDING REQUEST NO. 3. .... 45
BNSF's CONTENTIONS REGARDING REQUEST NO. 3. .... 46
SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 3. .... 46
SJVR's REQUEST NO. 4: .... 48
BNSF's RESPONSE TO SJVR's REQUEST NO. 4. .... 48
SJVR's CONTENTIONS REGARDING REQUEST NO. 4. .... 48
BNSF's CONTENTIONS REGARDING REQUEST NO. 4. .... 49
SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 4. .... 49
SJVR's REQUEST NO. 34: .... 50
BNSF's RESPONSE TO SJVR's REQUEST NO. 34. .... 50
SJVR's CONTENTIONS REGARDING REQUEST NO. 34. .... 50
BNSF's CONTENTIONS REGARDING REQUEST NO. 34. .... 51
SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 34. .... 52
SJVR's REQUEST NO. 35: .... 53

BNSF's RESPONSE TO SJVR's REQUEST NO. 35. . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . 53
SJVR's CONTENTIONS REGARDING REQUEST NO. 35. . . . . . . . . . . . . . . . . . . . . . . 53
BNSF's CONTENTIONS REGARDING REQUEST NO. 35. . . . . . . . . . . . . . . . . . . . . 54
SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 35. . . .. . . . . . . . . . . . . .. 54
SJVR's REQUEST NO. 36: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 55
BNSF's RESPONSE TO SJVR's REQUEST NO. 36. . . . . . . . . . . . . . . . . . . . . . . . . . . . .55
SJVR's CONTENTIONS REGARDING REQUEST NO. 36. . . . . . . . . . . . . . . . . . . . . . .55
BNSF's CONTENTIONS REGARDING REQUEST NO. 36. . . . . . . . . . . . . . . . . . . . . .56
SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 36. . . .. . . . . . . . . . . . . .56
SJVR's REQUEST NO. 37: . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . .57
BNSF's RESPONSE TO SJVR's REQUEST NO. 37. . . . . . . . . . . . . . . . . . . . . . . . . . . . .57
SJVR's CONTENTIONS REGARDING REQUEST NO. 37. . . . . . . . . . . . . . .. . . . . . . . . 57
BNSF's CONTENTIONS REGARDING REQUEST NO. 37. . . . . . . . . . . . . . . . . . . . . .57
SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 36. . . . . . . . . . . . . .. . . . .59

**IV. <u>CONCLUSIONS</u>**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .55

**SVJR's Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .60

**BNSF's Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . . . . . . . 60

**SJVR's Reply to Conclusion**. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .. . . . . . . . . . 60

# TABLE OF AUTHORITIES


Benas v. Baca, No. CV 00-01 1507, 2003 U.S. Dist. LEXIS 27440, *6 (C.D. Cal. July 18, 2003) .......... 36

*BNSF v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) .......... 1, 3, 28, 30, 33, 35, 39, 41, 42, 44, 47, 49, 60

*Burns v. Imagine Films*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) .......... 42, 45, 48, 55

*Chapman v. California Dept. of Ed.*, 2002 WL 32854376, *2 (N.D. Cal. 2002) .......... 37, 40

*Cullins v. Heckler*, 108 F.R.D. 172, 177 (S.D.N.Y. 1985) .......... 27

*Ellis v. Cambra*, No. 1:02-cv-05646, 2008 WL 860523, at *4 (E.D. Cal. March 27, 2008) .......... 20

*Jeffery v. Bennge*, No. 1:06-cv-00752, 2010 WL 475326, at *1 (E.D. Cal. Feb. 4, 2010) .......... 20

*Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73 (D. Mass. 1976) .......... 2, 43, 45, 48, 51, 53, 55, 57

*L.H. v. Schwarzenegger*, No. S-06-2042-LKK-GGH, 2007 WL 2781132, at *2 (E.D. Cal. Sept. 21, 2007) .......... 31

*Mobile Storage Tech., Inc. v. Fujitsu*, 2010 WL 1292545, at *1 (N.D. Cal. 2010) .......... 1, 43, 49

*Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281 (C.D. Cal. 1998) .......... 2, 3, 24, 25, 30, 33, 34, 36, 39, 40, 43, 44, 45, 47, 48, 51, 53, 55, 56, 57, 58, 59

*Paulsen v. Case Corp.*, 168 F.R.D. 285, 288 (C.D. Cal. 1996) .......... 5, 28, 30, 33, 34, 35, 37, 39, 41, 43, 44, 46, 47, 49, 51, 52, 53, 54, 55, 57, 58, 59, 60

*Safeco v. Rawstron*, 181 F.R.D. 441, 445-46 (C.D. Cal. 1998) .......... 36, 37, 40

*Sanchez v. Hendricks Hallowell Chevrolet*, 2006 WL 2884778, at *2 (E.D. Cal. 2006) .......... 1, 2, 3, 4, 25, 27, 30, 33, 34, 35, 39, 43, 46, 49, 51, 52, 53, 54, 55, 56, 57, 58, 59, 60

*Wolk v. Green*, No. C06-5025, 2007 U.S. Dist. LEXIS 83148, *5-6 n.4 (N.D. Cal. Oct. 29, 2007) .......... 36

FED. R. CIV. P. 33(A)(L) .......... 36

Fed.R.Civ.P. 26(a) .......... 30, 33, 39, 41, 43, 44, 46, 47, 55, 57, 59

# JOINT STATEMENT

## I. INTRODUCTORY STATEMENTS

A. SJVR'S Introductory Statement

As the Court is aware, defendant SJVR has counterclaimed for damages for plaintiff BNSF's breach of the parties' 1992 Agreement. First Amended Supp. Counterclaim dated Jan. 11, 2010, at ¶¶7-28. This discovery motion relates to BNSF's refusal to produce cost information relating to SJVR's damages claims, even though such cost information is clearly discoverable. *E.g., Mobile Storage Tech., Inc. v. Fujitsu*, 2010 WL 1292545, at *1 (N.D. Cal. 2010) (ordering production of financial information relating to damages calculations); *Sanchez v. Hendricks Hallowell Chevrolet*, 2006 WL 2884778, at *2 (E.D. Cal. 2006) (information relating to damages computations must be produced to allow parties "to prepare for trial" and to "make an informed decision about settlement"). *See also Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978) (discovery properly seeks "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case"). The Court should therefore grant this motion and order BNSF to produce the requested discovery.

The 1992 Agreement generally required BNSF to pay SJVR for using SJVR's railway lines in the San Joaquin Valley, based on the rates that BNSF was charging its customers. Thus, that Agreement required BNSF to determine the annual percentage changes to its own rates, to notify SJVR of those changes, and to apply the percentage changes to BNSF's payment obligations to SJVR. *See* Hemming Affidavit dated April 23, 2010, Exh. "A" at pp. 73-76 (the "1992 Agreement"). SJVR alleges that BNSF did not notify SJVR of BNSF's annual percentage rate changes, and that BNSF also failed to apply those annual percentage changes to its payment obligations to SJVR. First Amended Supp. Counterclaim dated Jan. 11, 2010, at ¶¶25-28. SJVR therefore seeks damages based on BNSF's failure to increase its payment rates to SJVR. *Id.*

The subject of this discovery motion is BNSF's fuel surcharge information, which relates to SJVR's damages claims because those surcharges were a factor increasing BNSF's rates under the 1992 Agreement. *See* Decl. of James B. Hicks dated April 23, 2010 ("Hicks Decl."), Exhs. "A" - "F" (copies of SJVR's interrogatories and document requests, and BNSF's responses).

Basically, BNSF's fuel surcharges were a means by which it increased customer charges, and thus should be considered in evaluating BNSF's rate increases under the 1992 Agreement. For example, adding a surcharge (say, 10%) to a BNSF rate meant that BNSF customers were paying 10% more, and though the parties disagree as to whether adding fuel or other surcharges would trigger the rate escalation provisions under the 1992 Agreement, that Agreement did not exclude surcharges from the rate escalation provisions. *See* 1992 Agreement at pp. 73-76. Indeed, it was not until 2007 that BNSF and SJVR entered a contract that specifically dealt with how to pay SJVR a portion of BNSF's fuel surcharges. *See* Fisher Depo. at p. 61 (Hicks Decl., Exh. "K"). Since SJVR is suing for a percentage of BNSF's rate increases including fuel surcharges under the 1992 Agreement, BNSF's fuel surcharge information is discoverable because it relates to SJVR's damages claims (*Sanchez, supra,* 2006 WL 2884778 at *1), and it also "bears on, or . . . reasonably could lead to other matter that could bear on, any issue that is or may be in a case" (*Oppenheimer, supra*, 437 U.S. at 351), and so it should be ordered produced.

In fact, BNSF recently produced discovery about its actual fuel surcharges which it has charged its customers (Hicks Decl. ¶5), while asserting that it lost money on those fuel surcharges and therefore should not have to pay SJVR anything. *E.g.,* Rickershauser Depo. at p. 37 (Hicks Decl., Exh. "G"). To the extent there was any doubt about the discoverability of this information, BNSF's assertions have put its fuel surcharge cost information directly at issue, and its Senior Vice President Peter Rickershauser promised to back BNSF's claims about losing money with actual numbers and documents. *Id.* at pp. 37-38. Yet BNSF broke that promise by continuing to refuse to produce its fuel surcharge cost information in response to SJVR's interrogatories and document requests, which has forced SJVR to bring this discovery motion. *See* Hicks Decl. ¶5.

BNSF cannot meet either its "burden to show that discovery should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes v. Halvorsen Marine Ltd.*, 179 F.R.D. 281, 283 (C.D. Cal. 1998). *See Kozlowski v. Sears, Roebuck & Co.*, 73 F.R.D. 73, 76 (D. Mass. 1976) (objecting party has the burden to show why documents should not be produced).

Since BNSF cannot meet this burden of proof, the requested discovery should be ordered produced for each of the following separate and independent reasons:

1. As a general rule, discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case" (*Oppenheimer, supra*, 437 U.S. at 351), and so "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Oakes, supra,* 179 F.R.D. at 283 (noting that "the discoverable information need not be admissible at the trial").

This rule applies with special force here, since SJVR seeks information about BNSF's costs relating to SJVR's damages calculations, and SJVR's damages expert William Rennicke testified under oath at his deposition just last week that he needs this information to calculate SJVR's damages at trial. Rennicke Depo. at p. 203 (Hicks Decl., Exh. "I"). Nor is this a small matter, since BNSF's own damages expert Benton Fisher claims that BNSF has paid SJVR over $1.2 million in fuel surcharges. BNSF's Rebuttal Expert Report dated Jan. 18, 2010, at pp. 25-26 (Hicks Decl., Exh. "J"). *Accord*, Fisher Depo. at pp. 33-34 (Hicks Decl., Exh. "K").

BNSF has no basis for withholding this evidence, and as Judge Wanger of this Judicial District has explained, information regarding the computation of damages must be produced both "to prepare for trial" and to "make an informed decision about settlement." *Sanchez, supra,* 2006 WL 2884778 at *2 (reviewing damages initial disclosures). *Accord, Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations).

2. BNSF has also put its fuel surcharge cost information directly at issue in this lawsuit, by asserting that until April of 2008, BNSF's cost of fuel was higher than what it collected on the fuel surcharge. *E.g.,* Rickershauser Depo. at p. 37 (Hicks Decl., Exh. "G"). BNSF cannot be allowed to make this assertion while at the same time refusing to answer interrogatories and produce documents relating to its cost of fuel. *Sanchez*, *supra,* 2006 WL 2884778 at *1 (the party asserting a computation must provide the underlying information and numbers).

As noted above, because BNSF put its fuel surcharge cost information at issue, its Senior Vice President Peter Rickershauser specifically promised under oath to back BNSF's claims about losing money with actual numbers and documents. Rickershauser Depo. at pp. 37-38 (Hicks Decl., Exh. "G"). Yet BNSF broke its promise by producing only SEC filings, which fail to show

its fuel costs. Hicks Decl., Exh. "1" (copies of BNSF's document production bate-stamped BNSF 1755-2101 lodged with Court as voluminous). It would be unfair to let BNSF claim it lost money on its fuel surcharges because its cost of fuel was higher than its fuel surcharge collections, at the same time that it refuses to back up that assertion with information and documents – especially after its own senior vice president promised to provide the relevant numbers and documents. *Sanchez , supra,* 2006 WL 2884778 at *1. The requested discovery should be ordered produced.

3. Nor is there any dispute that BNSF has additional fuel surcharge cost information and documents which it has not produced, and BNSF's own damages expert Benton Fisher admitted under oath at his deposition just last week that "BNSF maintains records relating to the actual cost of the fuel that it purchases." Fisher Depo. at p. 81 (Hicks Decl., Exh. "K"). Thus, <u>it is undisputed that BNSF has the information and documents necessary to calculate its fuel costs relating to the railway movements at issue in this case</u>.

Hoping to avoid the necessity of a formal motion to compel discovery, SJVR raised this issue at the February 17, 2010 telephonic status conference, and when the Court told BNSF's counsel to explain whether it was true "that there are no further documents in [BNSF's] care, control and custody re [its] fuel surcharge program, other than the SEC documents" which have been produced by BNSF, BNSF's counsel admitted that "the materials produced in this litigation" are <u>not</u> "all the documents in BNSF's 'care, control and custody' regarding the fuel surcharge program." *See* SJVR's Status Conference Statement dated Feb. 17, 2010, at p. 2 (Hicks Decl., Exh. "L"); SJVR's counsel's follow-up letter (*id.*, Exh. "M"); and BNSF's counsel's response. *Id.*, Exh. "N". BNSF is basically telling the Court that it does have more responsive information, but won't produce it. That's just wrong. *Sanchez , supra,* 2006 WL 2884778, at *2 (the party asserting a computation must provide the underlying information).

4. Finally, BNSF will likely argue that its fuel surcharges are not "rates" and are therefore not relevant to SJVR's damages calculations. But as noted above, if it walks and talks like a duck, it is a duck, and adding a 10% surcharge to a BNSF rate means the BNSF customer is paying 10% more. Moreover, the rate escalation provisions under the 1992 Agreement do not exclude surcharges from the rate escalation provisions (1992 Agreement at pp. 73-76) , and

SJVR's damages expert William Rennicke has testified under oath that he needs BNSF's fuel surcharge cost information to calculate SJVR's damages. Hicks Decl., Exh. "I" at p. 203.

Finally, although BNSF's other expert witness Lawrence Cole says that a fuel surcharge is supposedly not part of a rate, he admits that BNSF's own records show fuel surcharge amounts are part of the rate charged to customers. *See* Cole Depo. at pp. 64-65 ("The gross revenue rate includes the fuel surcharge") (Hicks Decl. Exh. "O"). *See also* SJVR's Rebuttal Expert Report dated Jan. 19, 2010, at p. 10 (Hicks Decl., Exh. "H") (noting that "[a] supplemental response by BNSF, provided on January 7, 2010, notes that the BNSF 01451 revenue data includes fuel surcharges). As SJVR's expert witness Mr. Rennicke concludes, "The fact that BNSF says that fuel surcharge is included in revenue per car in the BNSF's internal databases demonstrates further evidence . . . that fuel surcharges are considered an integral component of the rate per car." *Id.*

Thus, BNSF's fuel surcharge cost information is discoverable since it relates to SJVR's damages claims (*Mobile, supra*, 2010 WL 1292545 at *1), and it is also a "matter that bears on, or that reasonably could lead to other matter that could bear on, any issue <u>that is or may be</u> in a case." *Oppenheimer, supra*, 437 U.S. at 351 (emphasis added). *See Paulsen v. Case Corp.*, 168 F.R.D. 285, 288 (C.D. Cal. 1996) (ordering production of possibly irrelevant information, since an evidentiary ruling "is more properly left to the district court at trial").

Because SJVR's damages expert William Rennicke has testified that "fuel surcharges are considered an integral component of the rate per car" (Hicks Decl., Exh. "H" at p. 10), and that he needs BNSF's fuel surcharge cost information in order to calculate SJVR's damages (*id.*, Exh. "I" at p. 203), it should be ordered produced so that SJVR "will have a fair opportunity to present its case at trial." *Paulsen, supra*, 168 F.R.D. at 288. Since this case largely boils down to rate-making issues, it is unfair for BNSF to refuse to produce documents related to its fuel surcharges, when it admits that the documents and data exist, and even asserts that it lost money on its fuel surcharges. BNSF as the plaintiff decided to file this lawsuit, and it needs to step up to the plate and produce the requested information and documents.

///

///

B. BNSF'S Introductory Statement

## I. BACKGROUND OF THE LITIGATION

BNSF is a Class I railroad that moves freight across the country. San Joaquin Valley Railroad Company (SJVR) is a short-line railroad (also referred to as a handling carrier) that conducts rail operations in the San Joaquin Valley area. The transactions at issue in this litigation involve tracks that SJVR acquired in 1999. Those tracks were originally owned by BNSF's predecessor, the Atchinson Topeka and Santa Fe Railway Company (ATSF).

In 1992, BNSF's predecessor sold the tracks in question, other rail assets and the associated transportation business to Tulare Valley Railroad Company (TVRR). The "1992 Contract" effected that conveyance. ATSF later merged with Burlington Northern Railway to become BNSF. TVRR later sold most of the assets acquired pursuant to the 1992 Contract to SJVR.

Besides selling assets and operational rights the 1992 Contract called for rail traffic (loaded cars) to be interchanged between ATSF (now BNSF) and TVRR. In connection with purchasing the TVRR's assets SJVR, assumed TVRR's obligations under the 1992 Contract. The agreement provided the revenue arrangement applicable to interchanged cars. The implementation of the revenue arrangement between the two railroads gives rise to this litigation.

The dispute supposedly extends over a 16 plus year period; yet until recently no complaint regarding contractual performance had been uttered. In 2008, SJVR first charged that soon after execution of a 1992 Contract BNSF breached the revenue arrangement and never thereafter complied. This lawsuit is premised upon the contention that SJVR did not receive the agreed upon compensation for moving loaded cars to or from stations on the acquired rail lines and the point of interchange with BNSF. BNSF sued when SJVR refused to abide by the revenue arrangements that had been in place for well over a decade.

The primary issue to be decided at trial is whether BNSF should have paid SJVR more for providing handling carrier services. This Court framed the dispositive issue as follows:

> On November 1992, BNSF's predecessor, the Atchison Topeka and Santa Fe Railway Company ("ATSF") and TVRR entered into a contract, ("1992 Contract"), which authorized BNSF to set "through-rates" for interchange of rail traffic for 25

> years. Under the 1992 Contract, TVRR promised to concur in those rates so long as TVRR received the divisions of revenue called for by paragraph 31 of the 1992 Contract. Paragraph 31 provided that at the end of each calendar year, commencing with the year-end 1993, BNSF would determine whether there had been a percentage increase or decrease in the level of its joint through-rates on movements to or from the stations listed in Table 1. Paragraph 31 specified that BNSF was to notify the Defendants of the results of this determination and any percentage change was to be applied to the division set forth in Table 1. Paragraph 31 also provided that "Nothing in this agreement shall preclude [BNSF] and [defendants] from negotiating and agreeing to different divisions than those specified in Table 1 for contract movement to or from any of the aforementioned stations." Paragraph 16 of the contract provided that "the agreement shall be amended or modified only by written agreement signed by the parties."
>
> BNSF asserts that in 1994, BNSF and SJVR entered into a letter of agreement ("1994 Letter of Agreement"), in which the parties agreed to a new division of revenue arrangement. BNSF contends that the 1994 Letter of Agreement provided that the through-rates would remain constant. Paragraph 7(a) of the 1994 Letter of Agreement provided that: "[BNSF] shall pay [SJVR] the per car charges (hereinafter "Switching Absorption") as shown in Table 1 for each loaded revenue car interchanged between [BNSF] and [SJVR] on freight shipments originating on or destined to facilities located on branch line served by [SJVR]." Paragraph 11 of the Letter Agreement provided that the rates to Table 1 stations would remain in effect from year to year unless canceled. BNSF argues that BNSF and SJVR negotiated and agreed to the fixed rates specified in Table 1 of the 1994 Letter of Agreement as opposed to the yearly division of revenue adjustments (based on increases or decreases in BNSF's through-rates) arrangement provided by the 1992 Contract.

ECF Doc. No. 62 (Order denying SJVR Motion of Summary Judgment).

The 1992 Contract upon which SJVR's claims are based empowers BNSF to set "through rates" for "through routes" for 25 years. "Through routes and rates are set to allow shippers to ship from one location to another without having to piece together multiple carriers' routes and rates. In other words, a single through route can span multiple carriers' lines but only one rate – the through rate – is quoted and charged for transportation services provided by two or more carriers." Amended Complaint ¶ 12 (ECF Doc. No. 85). For 25 years following the execution of the 1992 Contract, SJVR committed to concur in BNSF through rates so long as compensation called for by paragraph 31 of the 1992 Contract was paid. 1992 Contract ¶¶ 29-31 (Eighth Hemming Aff., Ex. A).

///

## II. THE CURRENT DISCOVERY DISPUTE

SJVR now asserts, after a course of dealing spanning more than a decade, that the revenue arrangement has not been properly implemented and that the amounts received for moving loaded cars to and from interchange with BNSF have been insufficient. On top of that, and the subject of this motion, SJVR belatedly contends that the divisions of revenue received by SJVR (also called switching absorption charges) should have included a portion of the fuel surcharges that BNSF collects from shippers.

Fuel surcharges are a cost recovery mechanism employed by Class I railroads like BNSF that among other things protect against unpredictable fuel price fluctuations. Hale Decl. ¶ 2. BNSF bases fuel surcharges on the U.S. average price of Retail On-Highway Diesel Fuel (HDF) as reported by the U.S. Department of Energy. *Id.* As the HDF index changes, up or down, so too do the per carload fuel surcharges paid by shippers. *Id.* BNSF publishes tables that detail fuel surcharges as a percentage of the freight rates. *Id.* Fuel surcharges are accessorial charges, which are not part of the through rates charged to shippers. *Id.* ¶ 3. Fuel surcharges are separate and distinct from rates. *Id.*

Rates and fuel surcharges are set independently. Rates are either published on a railroad's website or contained in a private transportation contract between a railroad and a shipper. In some cases rates are regulated and must be approved by the Surface Transportation Board. Rates applicable to the carload movements in this litigation generally cover longer periods of time than do fuel surcharges. In contrast, fuel surcharges are intended to respond to often times dramatic fuel cost fluctuations. Because the price of fuel varies on an almost daily basis, fuel surcharges are re-calculated each month.

Despite the distinct nature and relatively recent genesis of fuel cost recovery, SJVR ascribes almost $1 million in damages to fuel surcharges, contending that sharing in such revenues is somehow implied by the 1992 Contract. Damages associated with fuel run even higher when SJVR's double fuel surcharge counting is given effect. Yet, the only agreement between BNSF and SJVR that addresses fuel surcharges, could not be clearer: "SJVR understands and agrees that BNSF is under no obligation to provide a Fuel Surcharge Payment to it or any other handling

carrier shortline." Fuel Surcharge Agreement at 1 (Eighth Hemming Aff., Ex. B). Without such an obligation, fuel surcharges cannot be implied or recovered against BNSF. Notably, the Fuel Surcharge Agreement predates this litigation.

On the basis of the Fuel Surcharge Agreement alone, this Court should deny further discovery regarding "fuel surcharge information" or "cost information." In no event could fuel surcharge information lead to the discovery of admissible evidence because as SJVR has acknowledged "BNSF is under no obligation to provide" fuel surcharges. Besides that, BNSF has already produced all fuel surcharge revenue data associated with movements to and from the stations covered by the 1992 Contract.

## III. PARAGRAPH 31, UPON WHICH SJVR BASES FUEL SURCHARGE CLAIMS, DOES NOT INCLUDE FUEL SURCHARGES

SJVR's demand for fuel surcharges to be included in the shortline's division of revenues is based solely on paragraph 31 of the 1992 Contract. While BNSF asserts that another contract establishes the applicable revenue arrangement (the 1994 Letter of Agreement), solely for the purposes of this motion BNSF will assume that the revenue arrangement in the 1992 Contract applies. Paragraph 31 calls for the payments made to SJVR for moving traffic to or from the referenced stations to be adjusted as follows:

> At the end of each calendar year, commencing with year-end 1993, [BNSF] shall determine whether there has been a percentage increase, percentage decrease or no change in the level of its joint through rates on movements to or from the stations listed in Table 1 between the month of January of the subject year and the month of December of such year. [BNSF] shall notify [defendants] of the results of this determination and any percentage change, whether an increase or decrease, shall be applied to the division set forth in Table 1 for movements to or from the above-referenced stations during the calendar year immediately following the year for which the determination was made. Nothing in this agreement shall preclude [BNSF] and [defendants] from negotiating and agreeing to different divisions than those specified in Table 1 for contract movements to or from any of the aforementioned stations.

1992 Contract ¶ 31.

In other words, if BNSF's through rates for line-haul movements increase, SJVR's divisions of revenue increases; if through rates decrease, SJVR's divisions of revenue decrease. Table 1 in the

1992 Contract lists the per car divisions of revenue for rail movements to and from the designated stations. 1992 Contract, page 75. Interchange means the transfer from one railroad to another of the obligation to move a loaded car and the opportunity to earn revenue from that movement. To effect interchange SJVR hauls rail cars from its lines – the Table 1 stations – to a rail yard where the traffic is turned over to BNSF for a distant movement. Alternatively, SJVR picks up a car brought by BNSF to the interchange yard and makes the delivery to a shipper at a Table 1 station. When a smaller "short-line" railroad like SJVR interchanges with a line-haul railroad, like BNSF, the compensation paid to the short-line for those last or first miles of movements is referred to as "switch charges" or "division of revenue."

Forty six stations are listed in Table 1. *Id.* As an example, the rate to be paid for rail movements to or from the Visalia station was set as $315. BNSF Mem. of Law for Summ. Judg. at 8 (ECF Doc. 122).[1] If, for instance, a Visalia originating rail car was destined for Chicago, BNSF would be billed $315 by SJVR for the short-line portion of the move – from Visalia to BNSF's interchange yard at Bakersfield or Fresno. *Id.* BNSF would bill the shipper the agreed upon or published transportation rate and pay the division of revenue (*i.e.* $315) stated on the SJVR invoice associated with that car.

No language in Table 1, paragraph 31, or the entire 1992 Contract mentions fuel surcharges. First Patterson Dep. 24:15-25:3, 164:2-8 (Eighth Hemming Aff., Ex. C). SJVR nonetheless divines fuel surcharges to be "implied" in the 1992 Contract. *Id.*

SJVR gropes to explain that fatuous contention as follows:

> Q. Does Plaintiff's Exhibit No. 1 [the 1992 Contract] in any way deal with, specify, or call for fuel surcharges?
>
> MR. HICKS: .....

---

[1] Full citation to the record is contained in BNSF's memorandum of law for the pending motion for summary judgment. In that motion, BNSF has sought to dismiss SJVR's counterclaims as time barred and to preclude the recovery of any fuel surcharge damages as a matter of law. The latter motion is based primarily on the Fuel Surcharge Agreement.

A. I would say fuel surcharges are implied in Exhibit No. 1 in section 31 when it talks about revenues. They're not expressly covered. They were not common in 1992 when this document was created.

Q. So some place in paragraph 31, fuel surcharges are implied?

MR. HICKS: ...

Q. Is that correct?

A. Yes.

MR. HICKS: ......

Q. And how are they implied, sir?

MR. HICKS: ....

A. Fuel surcharges can be part of the through freight rate agreement between a shipper and a railway or railroad companies. ...

Q. And there's nothing specifically, either in Plaintiff's Exhibit 1 [the 1992 Contract] or Plaintiff's Exhibit 2 [the 1994 Letter of Agreement], about fuel surcharge.

MR. HICKS: ...

A. I don't recall any language in either of those exhibits that specifically addressed fuel surcharge.

First Patterson Dep. 24:15-25:10, 164:2-8.

Fuel surcharges were not charged on rail traffic originating or terminating at the Table 1 stations until 2002. Hale Decl. ¶ 4. Thus the drafters of the 1992 Contact could not have intended to incorporate such cost recovery mechanism into BNSF's through rates or any corresponding divisions of revenue under paragraph 31.

## IV. SJVR ADMITS FUEL SURCHARGES ARE NOT ENCOMPASSED BY THE 1992 CONTRACT

While BNSF's insistence that fuel surcharges are not a consideration in the 1992 Contract may not by itself render fuel surcharge information beyond the scope of discovery, SJVR's

admission of that fact does. SJVR's officer in charge of contract administration acknowledged that fuel surcharges are distinct from freight rates:

> Q. And you understand that fuel surcharges are different than freight rates.
>
> A. Yes.

Franger Dep. 89:3-5 (Eighth Hemming Aff., Ex. D).

But more fatal to SJVR's reach for further fuel surcharge information is the Fuel Surcharge Agreement that the same SJVR officer executed in 2007. SJVR's rationalizations about the Fuel Surcharge Agreement being executed after the 1992 Contract does not change the effect of the clear language dealing with fuel surcharge revenue.

The Fuel Surcharge Agreement begins by inventorying four extant agreements between BNSF and SJVR – one of which is the 1992 Contract from which SJVR infers entitlement to share in fuel surcharges. Fuel Surcharge Agreement, Preamble at iii. After referencing the 1992 Contract the Fuel Surcharge Agreement goes on to state: "<u>SJVR understands and agrees that BNSF is under no obligation to provide a Fuel Surcharge Payment to it</u> or any other handling carrier shortline." Fuel Surcharge Agreement at 1 (Article I(C)) (emphasis added). Other provisions recognize that participation in the fuel surcharge program is entirely voluntary and made available to SJVR at BNSF's "sole discretion." *Id.* at 1 (Article 1(B)) and 2 (Article II (C)). By incorporating the 1992 Contract and acknowledging that SJVR has no right to receive fuel surcharge revenues, the Fuel Surcharge Agreement precludes any claim about fuel surcharges being an element of SJVR's supposed damage analysis.

SJVR reluctantly concedes the ramifications of the Fuel Surcharge Agreement:

> Q. And that BNSF is under no obligation to provide fuel surcharge payments?
>
> A. That is a stipulation where they point that out in their fuel surcharge agreement.
>
> Q. And you signed on to it.
>
> A. I did not, but --

Q. Your company did.

A. Yes. It looks like Sandy Franger signed on behalf of our company.

Shefelbine Dep. 91:13-21 (Eighth Hemming Aff., Ex. --).

Franger, the Vice President of Contracts, recognized the import of BNSF's disclaimer of fuel surcharge obligations and disavowed involvement in any fuel surcharge claim:

> Q. And by reading [Art. I, Clause] C, you understood and agreed that BNSF was under no obligation to provide fuel surcharge payments to SJVR or any other handling carrier shortline.
>
> A. That's what the agreement states. …
>
> Q. Given your understanding of this agreement, Ms. Franger, what's your basis for contending – or what's SJVR's basis for contending that it's owed a fuel surcharge for BNSF?
>
> A. I -- I'm not involved in RailAmerica's [SJVR's parent] contention that we are owed a fuel surcharge. …
>
> Q. And you understand that fuel surcharges are different than freight rates.
>
> A. Yes.

Franger Dep. 87:21-25, 88:12-17, 89:3-5.

No breach of the Fuel Surcharge Agreement allegation has been made in this litigation.

## V. <u>BNSF HAS ALREADY PRODUCED ALL ARGUABLY RELEVANT FUEL SURCHARGE INFORMATION</u>

SJVR asserts, unburdened by contractual justification, that "[i]n addition to the increases in BNSF's basic rate division, [] SJVR should receive a portion of the price BNSF imposed on shippers, as a fuel surcharge, to cover excess fuel cost." Rennicke Supp. Report at 6 (Eighth Hemming Aff., Ex. F). SJVR goes on to argue that "[f]uel surcharges are another form of rail price increase, and as such should have been subject to the division escalation clause in the 1992 Agreement." *Id.* at 7. Based on this canard SJVR gins up damages totaling $739,391, supposedly attributable to unpaid fuel surcharges from 2002 to 2008 – increased to $875,871 by application of unauthorized prejudgment interest. *Id.* at 7-8. To "estimate th[at] level of surcharge recovery,

[SJVR's expert] used SJVR's average fuel per carload of 16.73 gallons and used 2002 fuel prices as a base." *Id.* at 7. Thus SJVR paradoxically bases supposed fuel surcharge damages on its own fuel data as opposed to the fuel surcharge revenue actually collected by BNSF. Yet SJVR claims entitlement to a "portion of" those revenues under the 1992 Contract.

The portion of fuel surcharges allegedly owed to SJVR is said to provide a basis for this motion. Fuel surcharge information is supposedly needed so that SJVR can refine "damage calculations." Tellingly SJVR's damages expert, Rennicke, admittedly did not take the controlling Fuel Surcharge Agreement into account. First Rennicke Dep. 93:18-94:9 (Eighth Hemming Aff., Ex. G). In fact, Rennicke completely ignored SJVR's understanding and agreement that BNSF had no obligation to make fuel surcharge payments. *Id.* But at his behest, SJVR seeks further fuel surcharge discovery.

**a. <u>BNSF already provided information regarding the fuel surcharges collected on shipments to or from Table 1 stations</u>**

On December 22, 2009, BNSF proposed the following resolution of this discovery dispute:

> Though BNSF strongly feels fuel [sur]charge data is not at issue in this litigation nor discoverable, to resolve the dispute we'd be willing to address surcharges in an interrogatory response detailing general fuel [sur]charges on a monthly basis from when they started in 2002 to present.

Dec. 09/Jan. 10 email chain on fuel surcharge dispute (Eight Hemming Aff., Ex. H).

SJVR accepted the offer on December 31, 2009 but purported to retain the right to seek more data, including fuel surcharge *cost* data: "SJVR accepts your proposal, while reserving its rights to move to compel on any deficient responses, and as to fuel surcharge cost information, etc." *Id.* Although never defined, BNSF presumes the "cost information" SJVR seeks means the amounts paid by BNSF for fuel associated with a particular movement, as opposed to fuel surcharge paid to BNSF for that move.

On January 5, 2010, after a protracted email exchange regarding fuel surcharges but never focused on any of the specific discovery requests, BNSF responded: "we're almost there but the point the proposal was to resolve the dispute and not spend time and money on motions to compel.

That is why we were willing to compromise our objection as to fuel surcharges applicable to traffic originating or terminating at SJVR stations and otherwise agree to provide that data." *Id.*[2]

During January 2010 BNSF provided a supplemental interrogatory response regarding the fuel surcharges applicable to traffic originating or terminating at the Table 1 stations. Supplemental Interrogatory Response Regarding Fuel Surcharges (Hicks Decl., Ex. BB). The supplemental response lists fuel surcharges by month back to 2002 when those amounts were first assessed:

**APPLICABLE FUEL SURCHARGES**

| Carload Fuel Surcharge Rate | |
|---|---|
| Month, Year and Fuel Surcharge Rate: | Prior HDF[3] Average: |
| Feb 2010 15.0% | Dec 2009 $2.745 |
| Jan 2010 15.5% | Nov 2009 $2.792 |
| Dec 2009 14.5% | Oct 2009 $2.672 |
| .....[Nov 2009 – June 2002] | |

[2] In violation of Local Rule 37-251, SJVR has never conferred with BNSF regarding the duplicative discovery requests that are the subject of this motion. Instead, SJVR has merely vaguely demanded "fuel surcharge information" or "cost information" in several emails without reference to any interrogatory or document request. This motion was filed on March 8, 2010 at which time the specific discovery requests on which this motion is based were first mentioned. After a month had passed without any action by SJVR to pursue a resolution, BNSF wrote:

> We have not heard anything from you regarding the motion to compel further fuel surcharge information that SJVR filed on March 8, 2010. Given the lack of any communication on the matter since that time we assume SJVR is not pursuing the motion nor the steps and joint statement required under the local rules. If otherwise, we at least need SJVR's draft of the statement to respond to by this Thursday.

Hemming April 13, 2010 Letter (Eighth Hemming Aff., Ex. I). To make matters worse, BNSF's efforts to secure SJVR's cooperation in the filing of the joint statement have been spurned. April 2010 email chain (Eighth Hemming Aff., Ex. J).

[3] Monthly average of Retail On-Highway Diesel Fuel prices as reported by the U.S. Department of Energy.

| | |
|---|---|
| May 2002 0.0% | Mar 2002 $1.230 |
| APR 2002 0.0% | Feb 2002 $1.152 |

| Carload Fuel Surcharge Table | |
|---|---|
| Prior Period's Avg. Price of HDF between: | Applicable Fuel Surcharge: |
| $1.25 to $1.299 | 0.5% |
| $1.30 to $1.349 | 1.0% |
| ....[$1.35 - $2.94] | |
| $2.95 to $2.999 | 17.50% |
| $3.00 to $3.049 | 18.00% |

*Id.*[4]

The supplemental response went on to disclose as follows:

> BNSF states that fuel surcharges are included in the revenue figures on the disc bates stamped BNSF 01451 Confidential. BNSF further states that SJVR executed a contract dated June 21, 2007 stating "SJVR understands and agrees that BNSF is under no obligation to provide a Fuel Surcharge Payment to it or any other handling carrier shortline." See BNSF 00289-97.

*Id.* (emphasis added).

Disc BNSF 01451 comprises a massive database. The data were was produced in the form in which they are maintained – an SAS database. For each of the many thousands of rail car

[4] The fuel surcharge percentages from the table are applied to the applicable transportation rate to increase the gross charge the shipper pays by that amount. For example, if the joint through rate for a Visalia to Chicago movement in February 2010 was $2000 per car, that sum would be multiplied by 15% to produce a fuel surcharge of $300. Hence the total freight bill would be $2,300.

moves to and from Table 1 stations, from 1996 to 2008 by month, BNSF provided the following electronic fields:

> Waybill Date, Origination Carrier Abbreviation, On Junction Carrier Abbreviation, On Junction Station, On Junction State, Off Junction Carrier Abbreviation, Off Junction Station, Off Junction State, Destination Carrier Abbreviation, Standard Commodity Code, Commodity Code Description, AAR Car Kind Code, Car Ownership Code, Load/Empty Indicator, BNSF Estimated Revenue, Total Estimated Revenue, Car Count, Estimated Shipment Weight, Origination Station, Origination State, Destination Station, Destination State, Waybill ID, BNSF Settlement Revenue, Total Settlement Revenue, BNSF Best Revenue, Total Best Revenue, Hazardous Material Standard Commodity Code

Hemming Oct. 2, 2009 Letter (Eighth Hemming Aff., Ex. K).

BNSF does not separately track or maintain fuel cost information for each of the thousands of movements originating or terminating at the Table 1 stations. Hale Decl. ¶ 5. As a result the disc does not include a separate category for "fuel surcharge cost information" based upon discrete car movements.

The SAS database also lacks a category for fuel surcharges paid by shippers. Nonetheless, that information can be determined – and has been provided. From (1) the total revenue derived from a movement and the month in which that movement occurred (as detailed in BNSF 01451), and (2) the applicable monthly fuel surcharge percentages (provided in chart form in BNSF's supplemental fuel surcharge interrogatory response), the fuel surcharges associated with each of the thousands of movements can be calculated. Computing the fuel surcharge is a simple exercise of subtracting applicable fuel surcharge for the month from the total revenue for any particular movement.

BNSF did exactly that calculation to factor out the fuel surcharges from total revenues in order to arrive at the through rates charged for each loaded car. BNSF produced the through rate data in an electronic Excel spreadsheet bates labeled BNSF 01447. The differences between the two revenue data sets are the fuel surcharges.

///

///

**b. <u>SJVR already has what its damages expert professes to need</u>**

SJVR apparently does not understand the data that have been produced. Damages expert, Rennicke, formulated at least two damages analyses: one based on the through rates reflected by BNSF 01447 in his September 2009 report, and one based on the total revenues (through rates plus fuel surcharges) reflected by BNSF 01451 in his November 2009 supplemental report. The inclusion of fuel surcharges results in the supplemental calculation being higher.

BNSF's expert explained the difference in the following rebuttal report example:[5]

| Origin, Destination | STCC | Year-Month | Original Revenue [Rennicke Report based on BNSF 01447] | Supp. Revenue [Supp. Rennicke Report based on BNSF 01451] | Difference | Monthly Fuel Surcharge |
|---|---|---|---|---|---|---|
| Indiantow, Hollis | 2042127 | 2003-01 | $ [under seal] | $ [under seal] | 2.0% | 2.0% |
| Alb Falls, Portervil | 2421184 | 2004-11 | $ [under seal] | $ [under seal] | 7.0% | 7.0% |
| Arvin, St Louis | 0119510 | 2005-06 | $ [under seal] | $ [under seal] | 10.5% | 10.5% |
| Brobow, Bartonett | 2499110 | 2005-12 | $ [under seal] | $ [under seal] | 18.5% | 18.5% |
| Hom Valley, Portervil | 2421184 | 2006-02 | $ [under seal] | $ [under seal] | 12.0% | 12.0% |
| Gra Forks, Bartonett | 2421184 | 2006-05 | $ [under seal] | $ [under seal] | 13.5% | 13.5% |
| Windsor, Cameo | 2821142 | 2007-11 | $ [under seal] | $ [under seal] | 17.5% | 17.5% |

Rennicke's rebuttal report issued on January 19, 2010 recognized the variation in the databases, but for some reason he was unable to separate rates from fuel surcharges:

> A supplemental response by BNSF provided on January 7, 2010, notes that the BNSF 01451 revenue data includes fuel surcharges. (BNSF 01447 apparently does not do so.) . . . BNSF 01451 does not break out the fuel surcharge from the revenue received for each carload, and thus I was not able to estimate the portion of the underpayment of fuel surcharges that in some form was covered by the increase in revenue per carload. I will continue to review the fuel surcharge information provided by BNSF and reserve the right to modify the calculations at a later date.

Rennicke Rebuttal Report at 10 (Hicks Decl. Ex. H).

---

[5] This chart is Table 4 in BNSF's expert rebuttal report, which has been filed under seal in connection with BNSF's summary judgment motion as Exhibit P to the Seventh Affidavit of Paul J. Hemming. (ECF Doc. No. 123). The actual revenue figures omitted from the above table are provided in the report.

Rennicke says that he only needs to know two things to refine his damage analysis: (1) whether the fuel surcharge percentage should be applied based upon the month of rail movement or month of payment for that movement, and (2) whether some of the thousands of movements were exempted from otherwise applicable fuel surcharges by legacy contracts. Second Rennicke Dep. 37:17-38:20 (Eighth Hemming Aff., Ex. L). The data produced by BNSF answered both questions: the month in which the rail movement occurred; and no.

## VI. COST INFORMATION IS EVEN LESS RELEVANT AND WELL BEYOND THE SCOPE OF PERMISSIBLE DISCOVERY

Apparently not satisfied with the revenue data that has been produced, SJVR demands fuel cost information. In fact, based on the incessant repetition in SJVR's papers, "cost information" appears to be what this motion is about. SJVR's requests regarding the precise "cost information" sought are vague, but SJVR seems to be asking for data showing the amount BNSF paid for fuel to move each of the thousands of loaded cars that started or finished their journey at the Table 1 stations. BNSF does not separately track or store the fuel costs attributable to specific car movements. Hale Decl. ¶ 5. In fact, given the interchange of cars and mix of trains at various points along any particular route, such an undertaking would not be possible. In short, no "cost information" attributable to specific movements can be produced because such data do not exist. *Id.*

Cost information is even more irrelevant than fuel surcharge revenues. Even if fuel surcharges were implied by the revenue arrangement in the 1992 Contract, the only relevant data would be the fuel surcharges collected by BNSF – information that has already been produced. The cost of fuel is not a metric that the even SJVR contends should affect division of revenue adjustments. "Through rates" are a revenue, not a cost, concept.

## VII. SJVR'S ARGUMENTS ARE SPURIOUS

SJVR's introductory statement insists that BNSF cannot make the showing necessary to avoid fuel surcharge discovery. SJVR stands the burden applicable to this motion on its head:

> If Defendants object to one of Plaintiff's discovery requests, it is Plaintiff's burden on his motion to compel to demonstrate why the objection is not justified. Ordinarily, Plaintiff must inform the Court which discovery requests are the subject

> of his motion to compel, and, for each disputed response, inform the Court why the information sought is relevant and why Defendants' objections are not justified.

*Jeffery v. Bennge*, No. 1:06-cv-00752, 2010 WL 475326, at *1 (E.D. Cal. Feb. 4, 2010) (Mag. J. Snyder) (denying motion to compel on various grounds, including a failure to demonstrate relevance); *see also Ellis v. Cambra*, No. 1:02-cv-05646, 2008 WL 860523, at *4 (E.D. Cal. March 27, 2008) (Mag. J. Snyder) (same).

Next, SJVR asserts that because BNSF cannot satisfy a burden that, in fact, SJVR must carry "the requested discovery should be ordered produced for each of the following [4] separate and independent reasons[.]"

**c. <u>Failed Reason No. 1</u>**

Supposedly, "SJVR's damages expert William Rennicke testified under oath at his deposition just last week that he needs this information to calculate SJVR's damages at trial." While Rennicke may be "interested" and "hoping to get" "cost information" his desires do not define the scope of discovery. Rennicke already has the allegedly necessary data even if fuel surcharges were implied by the 1992 Contract and the Fuel Surcharge Agreement could be ignored. *See* Part V(B). In fact, Rennicke included fuel surcharge revenues in his supplemental report calculations. Rennicke Rebuttal Report at 10 ("BNSF 01451 revenue data includes fuel surcharges") (Hicks Decl., Ex. H). He then double counted by "estimat[ing] the level of surcharge recovery, [] us[ing] SJVR's average fuel per carload of 16.73 gallons and [] 2002 fuel prices as a base" and adding those amounts to SJVR's claim. Rennicke Supp. Report at 7.

**d. <u>Failed Reason No. 2</u>**

SJVR bizarrely asserts that BNSF put "fuel surcharge cost information" at issue by answering deposition questions. BNSF does not make "fuel surcharge cost information" an issue in this litigation by responding to irrelevant discovery. Relevancy is not a proper deposition objection, so the witness responded to the following questions:

Q. During the period prior to April of 2008 did BNSF ever make a profit on fuel surcharges?

A. No.

Q. So is it your testimony that the BNSF fuel surcharge was exactly the same as the cost of fuel that BNSF paid?

A. No.

Q. Was there a difference between those two?

A. Yes.

Q. What was that difference?

A. BNSF did not recover the full cost of the additional fuel expense through the fuel-surcharge program.

Q. So it is your testimony that the fuel cost was more than the fuel surcharge that BNSF applied prior to April of 2008?

A. My answer is that the amount that BNSF recovered through its fuel surcharge program did not cover the differential fuel pricing that BNSF experienced.

Q. Are you saying that BNSF's cost of fuel was higher than the fuel surcharge which it applied? . . . .

A. If your question is, in the period prior to and up to April 2008, if BNSF's cost of fuel, the delta above which fuel cost does, based on how rates were established was higher than what we collected on the fuel surcharge, the answer is yes. . . .

Q. (By Mr. Hicks) I'm asking if you're going to back up that statement with numbers and documents.

A. I think the answer to that would be yes.

Rickershauser Dep. 36:4-38:5 (Hicks Decl. Ex. G).

Going beyond the discovery obligations imposed by the rules BNSF produced documents to which the witness was referring. Hicks Decl., Ex. 1 (BNSF 1755-2101, lodged with the Court). For instance, the 2008 Report,[6] which was produced, states:

[6] The 2008 report was filed with the Securities and Exchange Commission. Hence, the disclosures regarding fuel cost recovery are subject to the candor and completeness requirements imposed by the rules of that agency.

> We have been able to mitigate most of the rise in fuel costs through our fuel surcharges. . . .
>
> If the price of fuel increases substantially, the Company expects to be able to offset a significant portion of these higher fuel costs through its fuel surcharge program. However, to the extent that the Company is unable to maintain and expand its existing fuel surcharge program, increases in fuel prices could have an adverse effect on the Company's operating results, financial condition or liquidity.

BNSF 1770, 1779 (emphasis added).

Because BNSF was only able to "mitigate <u>most</u> of the rise in fuel costs through [] fuel surcharges" and could only "offset a significant <u>portion</u> of these higher fuel costs," fuel costs necessarily exceeded fuel surcharge revenues. *Id.* SJVR contends that the documents "fail to show [] fuel costs." In fact, the fuel costs are clearly reported; just not at the level of specificity that SJVR seeks. *See, e.g.*, BNSF 1792; Hale Decl. ¶ 5. But as already explained fuel cost data by specific car movements are not maintained, let alone discoverable. *Id.*

**e. <u>Failed Reason No. 3</u>**

SJVR dissembles that one of BNSF's experts "admitted under oath at his deposition just last week that 'BNSF maintains records relating to the actual cost of the fuel that it purchases.'" The quoted language comes from counsel's question, not the witness's answer. The exchange that took place follows:

> Q. Okay. So BNSF maintains records relating to the actual cost of the fuel it purchases; right?
>
> A. It does.
>
> Q. Have you ever seen that, those records?
>
> A. It's actual fuel purchase records.
>
> Q. Or any records reflecting its actual cost of fuel?
>
> A. Yes.
>
> Q. And that's because you asked BNSF and they gave it to you; right?

A. No. We're looking at one right now. They report publicly their annual and quarterly fuel expense.

Q. On a national basis; right?

A. Well, BNSF does it for the system.

Q. Right. And they did break out from that the cost of fuel related to their operations in connection with the rail lines under the 1992 agreement; right?

A. I don't know that it could do that.

Fisher Depo. 91:15-92:9 (Eighth Hemming Aff., Ex. M) (emphasis added).

To answer SJVR's counsel's last question – no, BNSF cannot break out fuel costs related to the operations associated with the rail lines covered by the 1992 Contract. Hale Decl. ¶ 5.

**f. Failed Reason No. 4**

SJVR finally pontificates that if for instance a 10% fuel surcharge is imposed then BNSF receives 10% more revenue, and thus "if it walks and talks like a duck, it is a duck[.]" The crude analogy does not hold water because SJVR is equating the more encompassing term "revenue" with the narrower term "rate." The 1992 Contract refers to rates, not revenues. And contrary to SJVR's charge that "BNSF's other expert witness … admits that BNSF's own records show fuel surcharge amounts are part of the rate charge to customer" that expert, in fact, explained:

Q. And how do you use those fuel surcharges in your analysis of the rate changes over the years?

A. The gross revenue rate include the fuel surcharge, so the fuel surcharge needed to be subtracted from the gross revenue.

Q. Why did it need to be subtracted from the gross revenue?

A. Fuel surcharge is not part of the rate.

Q. And why do you say that?

A. Because it's an ancillary charge.

Cole Dep. 64:23-65:7 (Eighth Hemming Aff., Ex. N). In short, the total or gross revenue earned from a movement is not the same as the through rate. Rather per car gross revenue reflects the rate plus any surcharges and other ancillary charges applicable to the movement.

C. SJVR's Reply Introductory Statement

As BNSF notes, this motion primarily relates to its fuel surcharge cost information. BNSF asserts – through its SEC filings, through its discovery responses in this case (including its Senior Vice President Peter Rickershauser's deposition testimony), and in its argument above – that it does not make a profit on its fuel surcharges, but instead loses money on it. As part of the parties' meet-and-confer efforts prior to this motion, and in response to SJVR's counsel's request, BNSF through its officer Peter Rickershauser specifically promised to back up BNSF's claims about losing money with actual numbers and documents. Rickershauser Depo. at pp. 37-38 (Hicks Decl., Exh. "G"). Yet BNSF broke that promise by producing only SEC filings, which as shown by BNSF's own quotes above, don't show the "actual numbers".

It is undisputed that BNSF has never produced the "actual numbers" relating to its fuel surcharge costs, despite SJVR's discovery requests and BNSF's actual promise to do so. As detailed by SJVR's portions of this joint statement, BNSF should be ordered to produce what responsive information it has, even if that information is complete, for each of the following separate and independent reasons:

1. BNSF does not deny that discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case" (*Oppenheimer, supra*, 437 U.S. at 351), or that "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Oakes, supra,* 179 F.R.D. at 283 ("the discoverable information need not be admissible at the trial"). Nor does BNSF dispute that SJVR's damages expert William Rennicke explained at his recent deposition that he needs information about BNSF's fuel surcharge costs to calculate SJVR's damages at trial. Rennicke Depo. at p. 203 (Hicks Decl., Exh. "I"). BNSF's own expert Benton Fisher says BNSF has paid SJVR over $1.2 million in fuel surcharges (*e.g.*,

Fisher Depo. at pp. 33-34 -- Hicks Decl., Exh. "K"), and so this is an important issue in SJVR's damages calculations.

Yet BNSF refuses to produce the "actual numbers" to support its assertion that it does not make a profit on its fuel surcharges, but instead loses money on it. But as Judge Wanger explains, information to support damages calculations must be produced both "to prepare for trial" and to "make an informed decision about settlement." *Sanchez, supra,* 2006 WL 2884778 at *2 (reviewing damages initial disclosures). *Accord, Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations).

BNSF has not met its "burden to show that discovery should not be allowed," or even its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. *See also Kozlowski, supra*, 73 F.R.D. at 76 (the objecting party has the burden to show why documents should not be produced). BNSF disagrees it has the burden on this motion, but it certainly has the burden to show why it has never produced the "actual numbers" relating to its fuel surcharge costs, despite its undisputed promise to do so, and it also cannot show why discovery shouldn't be produced even where it has waived its objections, as explained below.

In any event, whichever side has the burden of proof on a motion to compel discovery, discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case." *Oppenheimer*, 437 U.S. at 351. SJVR's damages expert Mr. Rennicke says he needs information about BNSF's fuel surcharge costs to calculate SJVR's damages at trial; BNSF promised to produce the "actual numbers" relating to its fuel surcharge costs, but failed to do so; and "Rule 26(b) is liberally interpreted to permit wide-ranging discovery . . . . [so] discoverable information need not be admissible at the trial." *Oakes, supra,* 179 F.R.D. at 283. BNSF should therefore be ordered to produce the "actual numbers" relating to its fuel surcharge costs, in response to SJVR's discovery requests.

2. BNSF's fuel surcharge information relates to SJVR's damages claims because those surcharges were a factor increasing BNSF's rates under the 1992 Agreement. Basically, fuel surcharges were a means by which BNSF increased customer charges -- for example, adding a surcharge of 10% to a BNSF rate means that BNSF customers are paying 10% more, and though the

parties disagree as to whether adding fuel or other surcharges would trigger the rate escalation provisions under the 1992 Agreement, that Agreement does not exclude surcharges from the rate escalation provisions. *See* 1992 Agreement at pp. 73-76. Indeed, as BNSF itself admits above, under the 1992 Agreement, "if BNSF's through rates for line-haul movements increase, SJVR's divisions of revenue increases; if through rates decrease, SJVR's divisions of revenue decrease." Therefore, BNSF uses its "fuel surcharge . . . to increase the gross charge the shipper pays by that amount. For example, if the joint through rate for a Visalia to Chicago movement in February 2010 was $2000 per car, that sum would be multiplied by 15% to produce a fuel surcharge of $300. Hence the total freight bill would be $2,300."

Thus, by BNSF's own admission, its fuel surcharges increase "the total freight bill", and although fuel surcharges are different than freight rates, BNSF's own expert witness Lawrence Cole admits that BNSF's "gross revenue rate <u>includes</u> the fuel surcharge." Cole Depo. at pp. 64-65 (Hicks Decl., Exh. "O") (emphasis added). *See also* SJVR's Rebuttal Expert Report dated Jan. 19, 2010, at p. 10 (Hicks Decl., Exh. "H") (noting that "[a] supplemental response by BNSF, provided on January 7, 2010, notes that the BNSF 01451 revenue data includes fuel surcharges). As Mr. Rennicke notes, "The fact that BNSF says that fuel surcharge is included in revenue per car in the BNSF's internal databases demonstrates further evidence . . . that fuel surcharges are considered an integral component of the rate per car." *Id.*

BNSF also cites a subsequent 2007 contract by which "SJVR understands and agrees that BNSF is under no obligation to provide a Fuel Surcharge Payment to it or any other handling carrier shortline." First of all, the 2007 contract does not purport to retroactively modify the 1992 Agreement, so it has no impact at all on SJVR's damages for the period before the 2007 contract was entered. *See* Fisher Depo. at p. 61 (Hicks Decl., Exh. "K").

And second, even for the period to which the 2007 contract applies, the quoted language just means that from and after 2007, BNSF has no absolute obligation to pay money under its voluntary fuel surcharge sharing program, except as may be required under the 2007 contract itself. In this case, SJVR is suing for a percentage of BNSF's rate increases including fuel surcharges under the <u>1992 Agreement</u>, not the 2007 contract, and so BNSF's fuel surcharge informa-

tion is discoverable because it relates to SJVR's damages claims. *Sanchez, supra,* 2006 WL 2884778 at *1.

Basically, BNSF admits it uses its fuel surcharges as a factor to increase its total customer charges -- effectively increasing the "rate". Since BNSF's "gross revenue rate includes the fuel surcharge" (Cole Depo. at pp. 64-65 -- Hicks Decl., Exh. "O"), adding a fuel surcharge triggers the rate escalation provisions under the 1992 Agreement, <u>and that Agreement does not exclude surcharges from the rate escalation provisions</u>. *See* 1992 Agreement at pp. 73-76. Thus, BNSF's fuel surcharge cost information at the very least "bears on, or . . . reasonably could lead to other matter that could bear on, any issue that <u>is or may be</u> in a case." *Oppenheimer, supra*, 437 U.S. at 351 (emphasis added). Especially because BNSF's own senior vice president agreed to provide the relevant numbers and documents, SJVR's requested discovery should be ordered produced.

3. BNSF claims it does not have complete information to answer SJVR's discovery, but there is no dispute that BNSF has additional fuel surcharge cost information and documents that it has not produced. Although BNSF disagrees about the meaning of its own expert Benton Fisher's sworn deposition testimony that "BNSF maintains records relating to the actual cost of the fuel that it purchases" (Fisher Depo. at p. 81 -- Hicks Decl., Exh. "K"), BNSF certainly has records going beyond the SEC documents which it produced, and Mr. Thornton himself admits that "the materials produced in this litigation" are <u>not</u> "all the documents in BNSF's 'care, control and custody' regarding the fuel surcharge program." Hicks Decl., Exh. "N".

BNSF has to produce all the responsive information it has in its possession and control, and state under oath that it has no further responsive information if its production doesn't fully answer the discovery request. *Cullins v. Heckler*, 108 F.R.D. 172, 177 (S.D.N.Y. 1985). Instead, BNSF is telling the Court that it does have more responsive information, but won't produce it, which is just plain wrong. *Sanchez* , *supra,* 2006 WL 2884778, at *2 (a party asserting a computation must provide the underlying information).

4. SJVR respectfully asks the Court not to follow BNSF's invitation to rule on this discovery motion as to whether BNSF's fuel surcharges are "rates" and/or are admissible to support damages calculations, since such evidentiary rulings are "more properly left to the district

court at trial"). *Paulsen, supra*, 168 F.R.D. at 288 (ordering production of possibly irrelevant information).

5. Although BNSF claims that SJVR supposedly agreed last December not to file this motion seeking fuel surcharge cost information, that's not true, since SJVR "reserv[ed] its rights to move to compel on any deficient responses, and as to fuel surcharge cost information . . . ." Hemming Aff., Ex. H (e-mail chain). And Mr. Rickershauser <u>subsequently</u> promised to back up BNSF's claims about losing money with actual numbers and documents (Rickershauser Depo. at pp. 37-38 -- Hicks Decl., Exh. "G"), so it was BNSF who broke its promise by producing only SEC filings, which don't show the "actual numbers", forcing SJVR to file this motion.

* * * * * * * * * * * *

This motion should be granted because he determinative facts are undisputed, since whatever BNSF may say SJVR's damages expert William Rennicke needs, he himself explains that "fuel surcharges are considered an integral component of the rate per car" (Hicks Decl., Exh. "H" at p. 10), and that he needs BNSF's fuel surcharge cost information in order to calculate SJVR's damages. *Id.*, Exh. "I" at p. 203. Indeed, BNSF's own expert Lawrence Cole admits that BNSF's "gross revenue rate includes the fuel surcharge" (Cole Depo. at pp. 64-65 -- Hicks Decl., Exh. "O"), and so BNSF's fuel surcharge cost information should be ordered produced so that SJVR "will have a fair opportunity to present its case at trial." *Paulsen, supra*, 168 F.R.D. at 288. BNSF filed this lawsuit, and it needs to produce the requested information and documents.

Finally, BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to SJVR's discovery at issue on this motion in its entirety. *Cullins, supra*, 108 F.R.D. at 177. BNSF does not address this issue in its portions of this joint statement, and so that requested relief is undisputed.

///

///

///

///

///

## VIII. CONTENTIONS REGARDING SJVR's INTERROGATORIES

SJVR's INTERROGATORY NO. 13:

"Identify, in Standard Comma Delimited Format, the movement data for every move originating and/or terminating on SJVR." (The defined term "Standard Comma Delimited Format" includes the items "Total Revenue Paid by Customer (Including Fuel Surcharge)", "BNSF Portion of Revenue (BNSF Division - Including Fuel Surcharge)", "Total Fuel Surcharge Paid by Customer", "BNSF's Portion Of Total Fuel Surcharge", and "Fuel Component of Variable Cost".) *See* Hicks Decl., Exh. "A" at pp. 3-4, 5.

BNSF's RESPONSE TO SJVR's INTERROGATORY NO. 13:

"Objection, BNSF does not store the requested data in comma delimited format and is not required to produce or identify data in that format pursuant to Fed. R. Civ. P. 34(E). Furthermore, this Interrogatory's purported definition of 'Standard Comma Delimited Format' as including 43 categories of data is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. Subject to those objections, for movements associated with Table 1 stations, BNSF has already provided the Origination and Destination information including location and carrier, where such movements came onto BNSF, where such movements went off BNSF and the on/off carrier. Please see the disc bates stamped BNSF 01451 Confidential dated 10/1/09 and the following electronic fields on that disc.

"Abbreviations of those fields are as follows:

"CARR - ABB1 Origination Carrier Abbreviation

"CARRABB2 On Junction Carrier Abbreviation

"R260JCT2 On Junction Station

"ST-JCT-02 On Junction State

"CARRABB3 Off Junction Carrier Abbreviation

"R260JCT3 Off Junction Station

"ST-JCT-03 Off Junction State

"CARR-ABB4 Destination Carrier Abbreviation

"OFCL-333 Origination Station

"OFCL-STA 1 Origination State

"OFCL-DES Destination Station

"OFCL-STA4 Destination State"

*See* Hicks Decl., Exh. "B" at pp. 2-3.

SJVR's CONTENTIONS REGARDING INTERROGATORY NO. 13:

BNSF has not provided meaningful information related to its fuel surcharge costs, which information is specifically requested. Yet, as detailed above, BNSF cannot meet either its "burden to show that discovery should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. Since BNSF cannot meet this burden of proof, the discovery should be ordered produced because "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Id.* (noting that "the discoverable information need not be admissible at the trial"). *See Oppenheimer, supra*, 437 U.S. at 351 (discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case").

Since SJVR seeks information about BNSF's costs relating to SJVR's damages calculations, BNSF has no basis for withholding this evidence, because information regarding the computation of damages must be produced so SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *Accord, Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations); Fed.R.Civ.P. 26(a). And in fact, BNSF has put its fuel surcharge cost information at issue in this lawsuit, by asserting that until April of 2008, BNSF's cost of fuel was higher than what it collected on the fuel surcharge. Rickershauser Depo. at p. 37 (Hicks Decl., Exh. "G"). BNSF has additional fuel surcharge cost information and documents which it has not produced, and it is discoverable because it relates to SJVR's damages claims. *Mobile, supra*, 2010 WL 1292545, at *1. *See* SJVR's Introductory Statement above, at pp. 1-5.

BNSF should therefore be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at

288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

BNSF's CONTENTIONS REGARDING INTERROGATORY NO. 13:

"[D]iscovery should always be viewed from the context of Fed.R.Civ.P. 26(b) which generally instructs that the amount of discovery requested must be balanced by the need for such discovery." *L.H. v. Schwarzenegger*, No. S-06-2042-LKK-GGH, 2007 WL 2781132, at *2 (E.D. Cal. Sept. 21, 2007). "A responding party is not generally required to conduct extensive research in order to answer an interrogatory, but a reasonable effort to respond must be made." *Williams v. Adams*, No. 1:05-cv-00124, 2009 WL 122031, at *1 (E.D. Cal. May 4, 2009) (Mag. J. Snyder). "The responding party shall use common sense and reason." *Id.*

Interrogatory No. 13 sought 43 categories of information in "Standard Comma Delimited Format" for each of thousands of movements to and from Table 1 stations. SJVR defined "Standard Comma Delimited Format" – Definition No. 9 – as the "format wherein each record is 1 line in the file, with each line being separated by an operating system dependant new line character(s), including but not limited to the following lines of data:"

| Position | Data Field |
|---|---|
| 1 | Movement Waybill Date |
| 2 | Movement Waybill Number (MMDDYYYY) |
| 3 | Freight Car Initials |
| 4 | Freight Car Number |
| 5 | Full AAR Car type |
| 6 | Car Ownership (BNSF System, Foreign, Private) |
| 7 | Car Mileage Charges Paid by BNSF |
| 8 | Car Per Diem Paid by BNSF |
| 9 | Lading Weight |
| 10 | Rate Authority Type (Contract, Quote, Tariff) |
| 11 | Rate Authority Name and Number |
| 12 | Seven Digit STCC Of Lading |
| 13 | Consignee |
| 14 | Consignor |
| 15 | Freight Payor |
| 16 | Total Revenue Paid by Customer (Including Fuel Surcharge) |

| | |
|---|---|
| 17 | BNSF Portion of Revenue (BNSF Division – Including Fuel Surcharge) |
| 18 | Total Fuel Surcharge Paid by Customer |
| 19 | BNSF's Portion Of Total Fuel Surcharge |
| 20 | Movement Origin City |
| 21 | Movement Origin State |
| 22 | Movement Origin FSAC |
| 23 | Movement Destination City |
| 24 | Movement Destination State |
| 25 | Movement Destination FSAC |
| 26 | First Railroad in Movement |
| 27 | First Junction In Rail Route |
| 28 | Second Railroad in Movement |
| 29 | Second Junction in Route |
| 30 | Third Railroad in Movement |
| 31 | Third Junction in Route |
| 32 | Fourth Railroad in Movement |
| 33 | Fourth Junction in Route |
| 34 | Fifth Railroad in Movement |
| 35 | Fifth Junction in Route |
| 36 | Sixth Railroad in Movement |
| 37 | Sixth Junction in Route |
| 38 | Seventh Railroad in Movement |
| 39 | Seventh Junction in Route |
| 40 | Total Variable Cost From BNSF's Internal Costing System (Not URCS) |
| 41 | Fuel Component of Variable Cost |
| 42 | Car Component of Variable Cost |
| 43 | Labor Component Of Variable Cost |

From this wish list of categories SJVR seeks to compel "fuel surcharge costs." BNSF already produced the revenue data covered by Categories 16-19 in the revenue fields contained on the disc BNSF 01451 and the supplemental fuel surcharge interrogatory response. *See* Part V(A-B). Compiling the requested categories of data, for each of the thousands of movements, especially in the form requested, in an interrogatory response is obviously overly burdensome. BNSF does not have much of the requested data and maintains none of the data in the requested format. Hence,

BNSF responded by referring to the electronic data on BNSF 01451. SJVR is just as capable as BNSF of performing the requested calculations or reformatting.

The other referenced category in SJVR's motion, Category 41 – "Fuel Component of Variable Cost" – does not appear to be related to fuel surcharges. And if that term is synonymous with "Fuel Surcharge Cost Information," BNSF does not maintain such cost data on the movement by movement basis, let alone in "comma delimited format."

SJVR's REPLY CONTENTIONS REGARDING INTERROGATORY NO. 13:

BNSF admits that it has not produced fuel surcharge cost information in response to this interrogatory, even though it is requested. Although it complains about "burden", BNSF as the plaintiff filed this lawsuit, and it should be ordered to produce the information in its possession or control relating to the railway movements at issue in this case, or it should at least be ordered to give SJVR access to that information, since "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . ." *Oakes, supra,* 179 F.R.D. at 283 (noting that "the discoverable information need not be admissible at the trial"). *See Oppenheimer*, 437 U.S. at 351 (discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case").

Since SJVR seeks information about BNSF's costs relating to SJVR's damages calculations, such information must be produced so SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations); Fed.R.Civ.P. 26(a).

BNSF should therefore be ordered to produce its fuel surcharge cost information so SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///

SJVR's INTERROGATORY NO. 14:

"Identify, in Standard Comma Delimited Format, the movement data for every move originating and/or terminating on SJVR (including but not limited to the movement data identified in Definition No. 9 above)." (As noted above, the defined term "Standard Comma Delimited Format" includes the items "Total Revenue Paid by Customer (Including Fuel Surcharge)", "BNSF Portion of Revenue (BNSF Division - Including Fuel Surcharge)", "Total Fuel Surcharge Paid by Customer", "BNSF's Portion Of Total Fuel Surcharge", and "Fuel Component of Variable Cost".) *See* Hicks Decl., Exh. "A" at pp. 3-4, 5.

BNSF's RESPONSE TO SJVR's INTERROGATORY NO. 14:

"See Response to Interrogatory No. 13." *See* Hicks Decl., Exh. "B" at p. 4.

SJVR's CONTENTIONS REGARDING INTERROGATORY NO. 14:

BNSF again failed to produce information related to fuel surcharge costs, which data is specifically requested. But as detailed above, BNSF cannot meet either its "burden to show that discovery should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. The discovery should therefore be ordered to be produced since "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Id.* This rule applies with special force because SJVR seeks information about BNSF's costs relating to SJVR's damages calculations, and information regarding the computation of damages must be produced both "to prepare for trial" and to "make an informed decision about settlement." *Sanchez, supra,* 2006 WL 2884778 at *2. BNSF has also put its fuel surcharge cost information directly at issue, by asserting that until April of 2008, BNSF's cost of fuel was higher than what it collected on the fuel surcharge. *E.g.,* Rickershauser Depo. at p. 37 (Hicks Decl., Exh. "G"). BNSF has additional fuel surcharge cost information and documents that it has not produced, which is discoverable because it relates to SJVR's damages claims. *Mobile, supra*, 2010 WL 1292545, at *1.

BNSF should be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge informa-

tion which is responsive to this interrogatory in its entirety. *See* SJVR's Introductory Statement above, at pp. 1-5.

BNSF's CONTENTIONS REGARDING INTERROGATORY NO. 14:

This request is no different than Interrogatory No. 13.

SJVR's REPLY CONTENTIONS REGARDING INTERROGATORY NO. 14:

Just as with regard to Interrogatory No. 13, BNSF admits it has not produced the requested fuel surcharge cost information. BNSF complains about "burden", but it was the party who filed this lawsuit, and it should be ordered to produce all of the information in its possession or control relating to the railway movements at issue in this case, or it at least should be ordered to give SJVR access to that information, so SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Oppenheimer, supra*, 437 U.S. at 351 (discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case").

BNSF should therefore be ordered to produce its fuel surcharge cost information so SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///

///

///

///

///

///

///

///

///

///

<u>SJVR's INTERROGATORY NO. 15:</u>

"Identify the movement data for every move originating and/or terminating on SJVR." (The defined term "movement data" includes "Total Revenue Paid by Customer (Including Fuel Surcharge)", "BNSF Portion of Revenue (BNSF Division - Including Fuel Surcharge)", "Total Fuel Surcharge Paid by Customer", "BNSF's Portion Of Total Fuel Surcharge", and "Fuel Component of Variable Cost".) *See* Hicks Decl., Exh. "A" at pp. 3-4, 5.

<u>BNSF's RESPONSE TO SJVR's INTERROGATORY NO. 15</u>:

"Objection, this Interrogatory is beyond the limit of 25 imposed by Fed. R. Civ. P. 33(a)(l) and paragraph 7(B)(2) of the Scheduling Order. Interrogatory No. 8 (Set 1) included 12 subparts. See objection raised therein and *Safeco v. Rawstron*, 181 F.R.D. 441, 445-46 (C.D. Cal. 1998) (where a single interrogatory requests disclosure of all information which forms the basis for response to request for admission, such request will be considered a separate interrogatory for each request for admission and count against a numerical interrogatory limit); *Wolk v. Green*, No. C06-5025, 2007 U.S. Dist. LEXIS 83148, *5-6 n.4 (N.D. Cal. Oct. 29, 2007) ('An interrogatory inquiring as to basis of responses to requests for admissions is treated as an interrogatory with subparts [with each request for admission inquired to counts as a single interrogatory].'); Benas v. Baca, No. CV 00-01 1507, 2003 U.S. Dist. LEXIS 27440, *6 (C.D. Cal. July 18, 2003) ('Plaintiff rightfully states that Defendant Willoughby's interrogatory contains 20 discrete subparts because it requires factual responses to all 20 of Defendant Rod's RQAs.')." *See* Hicks Decl., Exh. "B" at p. 4.

<u>SJVR's CONTENTIONS REGARDING INTERROGATORY NO. 15:</u>

BNSF limits its objections to this interrogatory on the basis of subparts, and therefore cannot meet its "burden to show that discovery should not be allowed" on the merits, or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283.

And BNSF's objections to interrogatory subparts should also not be sustained. Not only has the Court given BNSF substantial leeway about its untimely interrogatories and deposition notice, but SJVR's request for "movement data" does not consist of subparts as a matter of law. "Although there is no bright-line test as to whether a subpart should be counted as an interroga-

tory, the weight of authority interpreting Rule 33(a) requires examining whether the subparts are '... logically or factually subsumed within and necessarily related to the primary question.' "*Chapman v. California Dept. of Ed.*, 2002 WL 32854376, *2 (N.D. Cal. 2002) (distinguishing BNSF's cited *Safeco* case). If the asserted subparts are a logical extension of the basic interrogatory, then they constitute a single interrogatory. *Id.* While some courts have found interrogatories requesting all information which forms the basis for response to request for admission as a separate interrogatory, others have considered such a limitation an exalting of form over substance. *Id.* This Court did not "exal[t] form over substance" in overruling SJVR's untimeliness objections to BNSF's own discovery, and it should not do so now.

Although SJVR did previously ask for information which formed the basis of BNSF's qualified admissions or denials to SJVR's Requests for Admission, "seeking disclosure of facts (including the identity of those knowledgeable) and documents (including the identity of the individual in possession of the item) are directly related and should be treated as one subpart." *Id.* And even if the Court were to disagree with that interpretation and instead follow BNSF's cited *Safeco* case, SJVR urges it to follow the logic espoused in the *Chapman* case, where the court permitted the additional interrogatories *sua sponte*. 2002 WL 32854376 at *2. The *Chapman* court considered that, even though the prior interrogatories exceeded the numerical limit imposed by Rule 33(a), the interrogatories were neither cumulative nor duplicative. *Id.* The subject matter of the interrogatories was directly relevant to the issues in the case, and "[t]o limit discovery which is clearly relevant under these circumstances would exalt form over substance." *Id.*

SJVR also notes that this Interrogatory is simply one variant on its request for information relating to fuel surcharge costs. This information has been requested in multiple manners, and always with the same response: BNSF refuses to produce it.

BNSF should therefore be ordered to produce its fuel surcharge cost information so SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety. *See also* SJVR's Introductory Statement above, at pp. 1-5.

BNSF's CONTENTIONS REGARDING SJVR's INTERROGATORY NO. 15:

SJVR pronounces "movement data" to be a defined term which encompasses untold categories of data including something pertaining to fuel surcharges. In fact, movement data is not defined by the interrogatory and is not recognized as a defined term within BNSF's system or the industry. *See* SJVR Interrogatories, Set 3 (Hicks Decl., Ex. A). SJVR is apparently confused by the definition of "Standard Comma Delimited Format" contained in Interrogatory Nos. 13-14. Nothing in Interrogatory No. 15 even addresses fuel surcharges.

BNSF initially limited its responses to 14 of SJVR's numbered interrogatories because one inquiry contained 12 subparts, resulting in the 25 interrogatory cap being reached at Interrogatory No. 14. SJVR Interrogatory No. 8 (Set 1) stated:

> For any Request for Admission served on You by SJVR for which Your response is not an unqualified admission, state each portion of such Requests for Admission you deny, and as to each of those, identify all evidence you rely upon in support of that denial including each individual with knowledge thereof and each document You may or will rely on in support of such denials.

Because BNSF responded with 12 other than "unqualified admissions," each request for an explanation counted against the limit of 25.

More substantively, BNSF dropped the well-supported subpart objection in an effort to resolve the discovery dispute:

> As I mentioned before, to resolve the dispute we would be willing to provide monthly fuel surcharges applicable to traffic originating or terminating at SJVR stations and remove the sub-part objection and deliver responses to Interrogatory Nos. 15-25 without waiving any other objections that may be applicable and even though the interrogatory sub-part objection is well supported by multiple federal cases in California. SJVR would provide substantive responses to the Document Requests Nos. 1-3, Set 7.

Dec. 09/Jan. 10 email chain on fuel surcharge dispute. SJVR has either forgotten this accommodation or seeks to mislead the Court.

BNSF's supplemental response was as follows: "See the movement data produced on the discs bates stamped BNSF 01447 Confidential and BNSF 01451 Confidential." BNSF Supplemental Responses to SJVR Interrogatories, Set 3 (Eighth Hemming Aff., Ex. O). Those

data together with the publicly available and produced fuel surcharge tables enable SJVR and its expert to determine exactly the fuel surcharges collected for all Table 1 originating and terminating traffic.

SJVR's REPLY CONTENTIONS REGARDING INTERROGATORY NO. 15:

The only objections asserted by BNSF in its original responses related to the subpart issue, and it now makes clear that it is withdrawing or has withdrawn that objection. Since its only timely-asserted objection has been withdrawn, BNSF should be ordered to provide the requested information, including about "Fuel Component of Variable Cost."

BNSF's later-asserted objections are waived as a matter of law, and in any event, "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . ." *Oakes, supra,* 179 F.R.D. at 283 (noting that "the discoverable information need not be admissible at the trial"). BNSF's costs relating to SJVR's damages calculations must also be produced so that SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations).

BNSF should therefore be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///

///

///

///

///

///

///

SJVR's INTERROGATORY NO. 16:

"Identify the movement data for every move originating and/or terminating on SJVR (including but not limited to the movement data identified in Definition No. 9 above)." (As noted above, the defined term "movement data" includes "Total Revenue Paid by Customer (Including Fuel Surcharge)", "BNSF Portion of Revenue (BNSF Division - Including Fuel Surcharge)", "Total Fuel Surcharge Paid by Customer", "BNSF's Portion Of Total Fuel Surcharge", and "Fuel Component of Variable Cost".) *See* Hicks Decl., Exh. "A" at pp. 3-4, 5-6.

BNSF's RESPONSE TO SJVR's INTERROGATORY NO. 16:

"See Response to Interrogatory No. 15." *See* Hicks Decl., Exh. "B" at p. 4.

SJVR's CONTENTIONS REGARDING INTERROGATORY NO. 16:

BNSF again limits its objections on the basis of subparts, and so cannot meet its "burden to show that discovery should not be allowed" on the merits, or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283.

BNSF's objections to interrogatory subparts should also not be sustained, because "the weight of authority interpreting Rule 33(a) requires examining whether the subparts are '... logically or factually subsumed within and necessarily related to the primary question.' "*Chapman, supra,* 2002 WL 32854376 at *2 (distinguishing BNSF's cited *Safeco* case). If the asserted subparts are a logical extension of the basic interrogatory, then they constitute a single interrogatory. *Id.* SJVR did previously ask for information which formed the basis of BNSF's qualified admissions or denials to SJVR's Requests for Admission, but "seeking disclosure of facts (including the identity of those knowledgeable) and documents (including the identity of the individual in possession of the item) are directly related and should be treated as one subpart." *Id.* And even if the Court were to decide to follow BNSF's cited *Safeco* case, SJVR urges it to follow the logic espoused in the *Chapman* case, where the court permitted the additional interrogatories *sua sponte*. *Id.* The *Chapman* noted that "[t]o limit discovery which is clearly relevant under these circumstances would exalt form over substance." *Id.*

In any event, this Interrogatory is simply one variant on SJVR's request for information relating to fuel surcharge costs. This information has been requested in multiple manners, and

BNSF always says the same thing: BNSF won't produce it.

BNSF should therefore be ordered to produce its fuel surcharge cost information so SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety. *See* SJVR's Introductory Statement above, at pp. 1-5.

<u>BNSF's CONTENTIONS REGARDING INTERROGATORY NO. 16:</u>

SJVR likewise neglects to address BNSF's full response to this Interrogatory. BNSF supplemented the initial response as follows:

> Definition No. 9 – a purported definition of "Standard Comma Delimited Format" as including 43 categories of data is overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. BNSF does not store the requested data in comma delimited format and is not required to produce or identify data in that format pursuant to Fed. R. Civ. P. 34(E). Subject to those objections see the movement data produced on the discs bates stamped BNSF 01447 Confidential and BNSF 01451 Confidential.

This request is no different from what has already been addressed in Interrogatory Nos. 13-15.

<u>SJVR's REPLY CONTENTIONS REGARDING INTERROGATORY NO. 16:</u>

Once again, BNSF's only timely objection related to the subpart issue, and it makes clear that it is withdrawing or has withdrawn that objection. Since its only timely objection has been withdrawn, and its later-asserted objections are waived, BNSF should be ordered to provide the requested information, including about "Fuel Component of Variable Cost." *See Oppenheimer*, 437 U.S. at 351 (discovery properly relates to "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case"); *Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations).

BNSF should therefore be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

## III. CONTENTIONS REGARDING SJVR's DOCUMENT REQUESTS

SJVR's REQUEST NO. 1:

"All Documents constituting, referring to, relating to the following move data for every move originating and/or terminating on SJVR, including but not limited to: . . .

"P. Total Fuel Surcharge Applied to Move

"Q. BNSF's Portion of Fuel Surcharge"

*See* Hicks Decl., Exh. "C" at pp. 4-5.

BNSF's RESPONSE TO SJVR's REQUEST NO. 1:

"Objection: overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence as to those categories not identified below. Additionally, SJVR previously recognized not all rail cars SJVR interchanged with BNSF were for traffic originating and terminating at the stations listed in the 1992 Contract or April 1, 1994 Letter of Agreement. Subject to those objections, BNSF has already produced electronic data for many of the requested categories on the electronic Excel spreadsheet bates stamped BNSF 01447 Confidential together with various invoices. BNSF will additionally produce the underlying data used to create the Excel spreadsheet and additional requested categories in the form in which it is electronically stored in the ordinary course. The data in sum includes Categories A, B, E, F, G, J, N, O, R, S, T, U." *See* Hicks Decl., Exh. "D" at pp. 2-3.

SJVR's CONTENTIONS REGARDING REQUEST NO. 1:

Notably, BNSF does not agree to produce documents relating to Categories P ("Total Fuel Surcharge Applied to Move") or Q ("BNSF's Portion of Fuel Surcharge").

BNSF's boilerplate, stock objections do not excuse it from answering this request. *E.g., Burns v. Imagine Films*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) ("overbroad, vague, and unduly burdensome" objections held insufficient to defeat motion to compel). This is not the first time that BNSF's boilerplate objections have been held insufficient. *See BNSF v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (boilerplate objections or blanket refusals in response to Rule 34 request for production are insufficient to assert privilege).

In addition, and as detailed above, BNSF cannot meet its "burden to show that discovery

should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. *See Kozlowski, supra*, 73 F.R.D. at 76 (objecting party has the burden to show why documents should not be produced). Since BNSF cannot meet its burden of proof, the discovery should be ordered produced because "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Oakes, supra,* 179 F.R.D. at 283 ("the discoverable information need not be admissible at the trial"). *See Oppenheimer, supra*, 437 U.S. at 351 (discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case").

Because SJVR seeks information about BNSF's costs relating to SJVR's damages calculations, BNSF has no basis for withholding this evidence, since information regarding the computation of damages must be produced both "to prepare for trial" and to "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *Accord, Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations); Fed.R.Civ.P. 26(a). BNSF has also put its fuel surcharge cost information directly at issue in this lawsuit, by asserting that until April of 2008, its cost of fuel was higher than what it collected on the fuel surcharge. *E.g.*, Rickershauser Depo. at p. 37 (Hicks Decl., Exh. "G"). BNSF has fuel surcharge cost information and documents that it has not produced, which is discoverable because it relates to SJVR's damages claims. *Mobile, supra*, 2010 WL 1292545, at *1.

BNSF should thus be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this request in its entirety. *See* SJVR's Introductory Statement above, at pp. 1-5.

<u>BNSF's CONTENTIONS REGARDING REQUEST NO. 1:</u>

This request does not even seek "fuel surcharge cost information" as SJVR's motion contends. Categories P and Q – fuel surcharges applied to movements originating or terminating

at Table 1 stations – have already been produced in the SAS database. *See* Part V(A-B). Categories P and Q can be determined from the gross revenue data provided for the thousands of movements on the disc bates stamped BNSF 01451 and the supplemental fuel surcharge interrogatory response which details fuel surcharge percentages in effect from the 2002 inception of fuel surcharges.

SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 1:

BNSF did not object that this request was vague or ambiguous, and SJVR believes that the request seeks fuel surcharge cost information, especially as to "BNSF's Portion of Fuel Surcharge". BNSF should therefore be ordered to provide the requested information, since "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Oakes, supra,* 179 F.R.D. at 283. *See Oppenheimer*, 437 U.S. at 351 (discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case"); *Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations).

BNSF should therefore be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///

///

///

///

///

///

///

///

SJVR's REQUEST NO. 3:

"All Documents constituting, referring, calculating or relating to Your variable costs for every move originating and/or terminating on SJVR, including but not limited to:

"A. Total Internal Variable Cost (Not URCS)

"B. Fuel Component of Variable Cost

"C. Car Component of Variable Cost

"D. Labor Component of Variable Cost"

*See* Hicks Decl., Exh. "C" at p. 5.

BNSF's RESPONSE TO SJVR's REQUEST NO. 3:

"Objection: overbroad, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence. BNSF will not produce data related to its internal variable costs, which are only being requested to prejudice and harass BNSF." *See* Hicks Decl., Exh. "D" at p. 4.

SJVR's CONTENTIONS REGARDING REQUEST NO. 3:

BNSF again fails to produce documents relating to Category B, "Fuel Component of Variable Cost". Yet BNSF's boilerplate objections do not excuse it from answering this request. *E.g., Burns, supra*, 164 F.R.D. at 593 ("overbroad, vague, and unduly burdensome" objections held insufficient to defeat motion to compel). Nor is this is the first time that BNSF's boilerplate objections have been held insufficient. *See BNSF v. U.S. Dist. Court, supra*, 408 F.3d at 1149 (9th Cir. 2005) (boilerplate objections or blanket refusals in response to Rule 34 request for production are insufficient to assert privilege).

In addition, and as detailed above, BNSF fails to meet its "burden to show that discovery should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. *See Kozlowski, supra*, 73 F.R.D. at 76 (objecting party has the burden to show why documents should not be produced). The discovery should thus be ordered produced, because "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Oakes, supra,* 179 F.R.D. at 283 ("the discoverable information need not be admissible at the trial"). *See Oppen-heimer, supra*, 437 U.S. at 351 (discovery is appropriate about "any matter that bears on, or that

reasonably could lead to other matter that could bear on, any issue that is or may be in a case").

BNSF has no basis for withholding this evidence, since information regarding the computation of damages must be produced both so SJVR can "prepare for trial" and can "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *Accord, Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations); Fed.R.Civ.P. 26(a). BNSF also put its fuel surcharge cost information at issue, by asserting that until April of 2008, its cost of fuel was higher than what it collected on the fuel surcharge. *E.g.,* Rickershauser Depo. at p. 37 (Hicks Decl., Exh. "G"). BNSF has fuel surcharge cost information and documents that it hasn't produced, and which is discoverable because it relates to SJVR's damages claims. *Mobile, supra*, 2010 WL 1292545, at *1.

BNSF should thus be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this request in its entirety. *See also* SJVR's Introductory Statement above, at pp. 1-5.

<u>BNSF's CONTENTIONS REGARDING REQUEST NO. 3:</u>

This request does not seek "fuel surcharge cost information." And even if the requested "Fuel Component of Variable Cost" means fuel surcharge cost information, such data are not maintained, and a response would not lead to the discovery of admissible evidence. Fuel costs have nothing to do with the parties' revenue arrangement, and all revenue data have been produced.

<u>SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 3:</u>

The request clearly asks for fuel surcharge cost information – especially as to "Total Internal Variable Cost (Not URCS)" and "Fuel Component of Variable Cost" – and BNSF should be ordered to provide all of the requested information in its possession, since its costs relating to SJVR's damages calculations should be produced so that SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Mobile,*

*supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations); *Oakes, supra,* 179 F.R.D. at 283 ("Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence").

BNSF should therefore be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

SJVR's REQUEST NO. 4:

"All Documents constituting, referring or relating to Your calculation of the total charge to customers for every move originating and/or terminating on SJVR, including but not limited to those referencing fuel costs and rates." *See* Hicks Decl., Exh. "C" at p. 6.

BNSF's RESPONSE TO SJVR's REQUEST NO. 4:

"Objection: overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence. Additionally, SJVR previously recognized not all rail cars SJVR interchanged with BNSF were for traffic originating and terminating at that the stations listed in the 1992 Contract. Subject to those objections, please see Response No. 1." *See* Hicks Decl., Exh. "D" at pp. 4-5.

SJVR's CONTENTIONS REGARDING REQUEST NO. 4:

Just as above, BNSF leaves out its data related to fuel surcharges based on an objection of "overbroad, unduly burdensome, and not reasonably calculated to lead to the discovery of admissible evidence," but BNSF's stock objections do not excuse it from producing the requested documents. *Burns, supra,* 164 F.R.D. at 593; *BNSF v. U.S. Dist. Court*, 408 F.3d at 1149.

In addition, Notably, BNSF does not agree to produce documents relating to Categories P ("Total Fuel Surcharge Applied to Move") or Q ("BNSF's Portion of Fuel Surcharge").

BNSF's boilerplate, stock objections do not excuse it from answering this request. *E.g., Burns v. Imagine Films*, 164 F.R.D. 589, 593 (W.D.N.Y. 1996) ("overbroad, vague, and unduly burdensome" objections held insufficient to defeat motion to compel). This is not the first time that BNSF's boilerplate objections have been held insufficient. *See BNSF v. United States Dist. Court*, 408 F.3d 1142, 1149 (9th Cir. 2005) (boilerplate objections or blanket refusals in response to Rule 34 request for production are insufficient to assert privilege).

In addition, BNSF again cannot meet its burden to show why the requested documents should not be produced. *Kozlowski, supra*, 73 F.R.D. at 76. Since BNSF cannot meet this burden of proof, the documents should be ordered produced because "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Oakes, supra,* 179 F.R.D. at 283. Moreover, information regarding the

computation of damages must be produced both "to prepare for trial" and to "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. BNSF has also put its fuel surcharge cost information directly at issue, by asserting that until April of 2008, its cost of fuel was higher than what it collected on the fuel surcharge. *E.g.,* Rickershauser Depo. at p. 37 (Hicks Decl., Exh. "G"). BNSF has fuel surcharge cost documents that it has not produced, which are discoverable because it relates to SJVR's damages claims. *Mobile, supra*, 2010 WL 1292545, at *1. *See also* SJVR's Introductory Statement above, at pp. 1-5.

BNSF should therefore be ordered to produce its fuel surcharge cost information so SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this request in its entirety.

<u>BNSF's CONTENTIONS REGARDING REQUEST NO. 4:</u>

This request is a subset of the information covered by Document Request No. 1. Gross revenue data (what SJVR refers to as "total charges to customers"), including fuel surcharges, for movements originating or terminating at Table 1 stations were produced on the disc BNSF 01451. *See* Part V(A-B).

<u>SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 4:</u>

BNSF does not dispute the request asks for fuel surcharge cost information, and that it has not provided it. It should be ordered to provide all of the requested information in its possession, so that SJVR can review BNSFs costs relating to SJVR's damages calculations in "prepar[ing] for trial" and "mak[ing] an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Oppenheimer*, 437 U.S. at 351 (discovery can seek "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case").

BNSF should therefore be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

SJVR's REQUEST NO. 34:

"All Documents, constituting, relating to, or referring to the movement data for every move originating and/or terminating on SJVR." (As noted above, the defined term "movement data" includes "Total Revenue Paid by Customer (Including Fuel Surcharge)", "BNSF Portion of Revenue (BNSF Division - Including Fuel Surcharge)", "Total Fuel Surcharge Paid by Customer", "BNSF's Portion Of Total Fuel Surcharge", and "Fuel Component of Variable Cost".) *See* Hicks Decl., Exh. "E" at pp. 3-4, 5.

BNSF's RESPONSE TO SJVR's REQUEST NO. 34:

"For movements associated with Table 1 stations BNSF has already provided the Origination and Destination information including location and carrier, where such movements came onto BNSF, where such movements went off BNSF and the on off carrier. Please see the disc bates stamped BNSF 01451 Confidential dated 10/1/09 and the following electronic fields on that disc. Abbreviations of those fields are as follows:

"CARRABB 1 Origination Carrier Abbreviation

"CARR-ABB2 On Junction Carrier Abbreviation

"R260JCT2 On Junction Station

"ST-JCT-02 On Junction State

"CARRABB3 Off Junction Carrier Abbreviation

"R260JCT3 Off Junction Station

"ST-JCT-03 Off Junction State

"CARR - ABB4 Destination Carrier Abbreviation

"OFCL-3 33 Origination Station

"OFCL-STA 1 Origination State

"OFCL-DES Destination Station

"OFCL-STA4 Destination State"

*See* Hicks Decl., Exh. "F" at pp. 2-3.

SJVR's CONTENTIONS REGARDING REQUEST NO. 34:

BNSF once again fails to meet its "burden to show that discovery should not be allowed,"

or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. *See Kozlowski, supra*, 73 F.R.D. at 76 (the objecting party has the burden to show why documents should not be produced). The discovery should be ordered produced, because "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence . . . ." *Oakes, supra,* 179 F.R.D. at 283 ("the discoverable information need not be admissible at the trial"). *See Oppenheimer, supra*, 437 U.S. at 351 (discovery is appropriate about "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in a case").

It is the law of this Judicial District that information regarding the computation of damages must be produced both so SJVR can "prepare for trial" and can "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. BNSF put its fuel surcharge cost information at issue by asserting that until April of 2008, its cost of fuel was higher than what it collected on the fuel surcharge (Rickershauser Depo. at p. 37, Hicks Decl., Exh. "G"), and as noted above, BNSF has fuel surcharge cost information and documents that it hasn't produced, and which is discoverable because it relates to SJVR's damages claims. *Mobile, supra*, 2010 WL 1292545, at *1. *See also* SJVR's Introductory Statement above, at pp. 1-5.

BNSF should be ordered to produce its fuel surcharge cost documents so SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this request in its entirety.

<u>BNSF's CONTENTIONS REGARDING REQUEST NO. 34:</u>

This request merely repeats Interrogatory No. 15 in different words. Except for the interrogatory sub-part discussion, the same analysis applies. SJVR asserts that "movement data" is a defined term that is said to include untold categories of data, some of which pertain to fuel surcharges. Movement data is not a defined term. *See* SJVR Documents Request, Set 4 (Hicks Decl., Ex. E). SJVR is again confused by the definition of "Standard Comma Delimited Format." As it is, nothing in Document Request No. 34 even addresses fuel surcharges.

SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 34:

BNSF's response does not assert any objections, and its contentions do not request leave to do so at this time. It should be ordered to provide all the requested information in its possession, so that SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Paulsen, supra*, 168 F.R.D. at 288.

BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

SJVR's REQUEST NO. 35:

All Documents, constituting, relating to, or referring to the movement data for every move originating and/or terminating on SJVR (including but not limited to the movement data identified in Definition No. 9 above). (As noted above, the defined term "movement data" includes "Total Revenue Paid by Customer (Including Fuel Surcharge)", "BNSF Portion of Revenue (BNSF Division - Including Fuel Surcharge)", "Total Fuel Surcharge Paid by Customer", "BNSF's Portion Of Total Fuel Surcharge", and "Fuel Component of Variable Cost".) *See* Hicks Decl., Exh. "E" at pp. 3-4, 5.

BNSF's RESPONSE TO SJVR's REQUEST NO. 35:

"See Response to Request No. 34." *See* Hicks Decl., Exh. "F" at p. 3.

SJVR's CONTENTIONS REGARDING REQUEST NO. 35:

BNSF again fails to meet its "burden to show that discovery should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. *See Kozlowski, supra*, 73 F.R.D. at 76 (objecting party has the burden to show why documents should not be produced). The discovery should thus be ordered produced, because "Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence" (*Oakes, supra,* 179 F.R.D. at 283), and information regarding the computation of damages must be produced so SJVR can "prepare for trial" and can "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. BNSF put its fuel surcharge cost information at issue, by asserting that until April of 2008, its cost of fuel was higher than what it collected on the fuel surcharge (Rickershauser Depo. at p. 37, Hicks Decl., Exh. "G"), and BNSF's fuel surcharge cost information and documents are discoverable because they relate to SJVR's damages claims. *Mobile, supra*, 2010 WL 1292545, at *1.

BNSF should be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this request in its entirety. *See also* SJVR's Introductory Statement above, at pp. 1-5.

BNSF's CONTENTIONS REGARDING REQUEST NO. 35:

This request is simply a restatement of Interrogatory No. 16. The same analysis applies.

SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 35:

BNSF's response again does assert no objections, and its contentions do not request leave to do so at this time. It should be ordered to provide all the requested information in its possession or control, so that SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Paulsen, supra*, 168 F.R.D. at 288.

BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

SJVR's REQUEST NO. 36:

"All Documents, constituting, relating to, or referring to the movement data for every move originating and/or terminating on SJVR." (As noted above, the defined term "movement data" includes "Total Revenue Paid by Customer (Including Fuel Surcharge)", "BNSF Portion of Revenue (BNSF Division - Including Fuel Surcharge)", "Total Fuel Surcharge Paid by Customer", "BNSF's Portion Of Total Fuel Surcharge", and "Fuel Component of Variable Cost".) *See* Hicks Decl., Exh. "E" at pp. 3-4, 6.

BNSF's RESPONSE TO SJVR's REQUEST NO. 36:

"See Response to Request No. 34." *See* Hicks Decl., Exh. "F" at p. 3.

SJVR's CONTENTIONS REGARDING REQUEST NO. 36:

BNSF repeats its prior boilerplate objections, which is improper as a matter of law (*Burns, supra*, 164 F.R.D. at 593; *BNSF v. U.S. Dist. Court, supra*, 408 F.3d at 1149), and also fails to meet BNSF's "burden to show that discovery should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. *Accord, Kozlowski, supra*, 73 F.R.D. at 76 (objecting party has the burden to show why documents should not be produced). BNSF has no basis for withholding these documents, since information regarding the computation of damages must be produced. *Sanchez, supra*, 2006 WL 2884778 at *2. *Accord, Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations); Fed.R.Civ.P. 26(a).

BNSF put its fuel surcharge cost information at issue, and it should be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this request in its entirety. *See also* SJVR's Introductory Statement above, at pp. 1-5.

///

///

///

///

BNSF'S CONTENTIONS REGARDING REQUEST NO. 36:

This is the same as Document Request No. 34.[7]

SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 36:

BNSF's response again did not assert any objections to the request for fuel surcharge cost documents, and it does not request leave to do so at this time. BNSF should be ordered to provide all the requested information in its possession, so that SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Oakes, supra*, 179 F.R.D. at 283 ("Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence").

BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///
///
///
///
///
///
///
///
///
///
///
///
///
///

[7] SJVR complains about BNSF repeating objections, but why would redundant requests not draw repeat objections?

SJVR's REQUEST NO. 37:

"All Documents, constituting, relating to, or referring to the movement data for every move originating and/or terminating on SJVR (including but not limited to the movement data identified in Definition No. 9 above)." (As noted above, the defined term "movement data" includes "Total Revenue Paid by Customer (Including Fuel Surcharge)", "BNSF Portion of Revenue (BNSF Division - Including Fuel Surcharge)", "Total Fuel Surcharge Paid by Customer", "BNSF's Portion Of Total Fuel Surcharge", and "Fuel Component of Variable Cost".) *See* Hicks Decl., Exh. "E" at pp. 3-4, 6.

BNSF's RESPONSE TO REQUEST NO. 37:

"See Response to Request No. 34." *See* Hicks Decl., Exh. "F" at p. 3.

SJVR's CONTENTIONS REGARDING REQUEST NO. 37:

BNSF once again repeats its stock objections, which fail to meet BNSF's "burden to show that discovery should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. *See Kozlowski, supra*, 73 F.R.D. at 76 (objecting party has the burden to show why documents should not be produced). BNSF has no basis for withholding these documents, since information regarding the computation of damages must be produced. *Sanchez, supra*, 2006 WL 2884778 at *2. *Accord, Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations); Fed.R.Civ.P. 26(a).

BNSF put its fuel surcharge cost information at issue, and it should be ordered to produce its fuel surcharge cost information so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288), and it should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this request in its entirety. *See also* SJVR's Introductory Statement above, at pp. 1-5.

BNSF's CONTENTIONS REGARDING REQUEST NO. 37:

This is the same as Document Request No. 35.

///

SJVR's REPLY CONTENTIONS REGARDING REQUEST NO. 37:

BNSF again made no objections to SJVR's request for fuel surcharge cost documents, and it does not seek leave to do so at this time. BNSF should be ordered to provide all of the requested information in its possession, so that SJVR can "prepare for trial" and "make an informed decision about settlement." *Sanchez, supra*, 2006 WL 2884778 at *2. *See Oakes, supra,* 179 F.R.D. at 283 ("Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence"); *Paulsen, supra*, 168 F.R.D. at 288.

BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information which is responsive to this interrogatory in its entirety.

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

///

## IX. CONCLUSIONS

SJVR's Conclusion

For all of the reasons detailed above, BNSF fails to meet its "burden to show that discovery should not be allowed," or its "burden of clarifying, explaining, and supporting its objections." *Oakes, supra,* 179 F.R.D. at 283. It has no basis for withholding the requested information and documents, since information regarding the computation of damages must be produced. *Sanchez, supra*, 2006 WL 2884778 at *2. *Accord, Mobile, supra*, 2010 WL 1292545 at *1 (ordering production of financial information relating to damages calculations); Fed.R.Civ.P. 26(a).

BNSF should therefore be ordered to produce its fuel surcharge cost information and documents so that SJVR "will have a fair opportunity to present its case at trial" (*Paulsen, supra*, 168 F.R.D. at 288); and BNSF should also be ordered to confirm under oath that it has produced its other fuel surcharge information and documents which are responsive to these interrogatories and requests in their entirety.

BNSF's Conclusion

This motion focuses on the production of cost information. SJVR's closing remark that "BNSF should be [] ordered to produce its fuel surcharge cost information and documents" fails for the simple reason that cost information is not tracked on a movement by movement basis and the cost of fuel has no bearing on the revenue arrangement between the parties. Paragraph 31 of the 1992 Contract speaks in terms of through rates and divisions of revenue, not fuel costs. Even if SJVR's divisions of revenue should have been adjusted over the years, those increases or decreases would be based on revenue not cost. All data regarding fuel surcharge revenues have been produced.

In any case fuel surcharge discovery could not lead to admissible evidence because SJVR has already agreed and acknowledged that BNSF is under no obligation to share fuel surcharge revenues. Therefore, SJVR's professed relevance rationalization – that fuel surcharges should be included in damages calculations – cannot withstand scrutiny. The motion should be denied.

///

SJVR's Reply Conclusion

SJVR's expert William Rennicke says he needs BNSF's fuel surcharge cost information in order to calculate SJVR's damages (Hicks Decl., Exh. "I" at p. 203), and BNSF's expert Lawrence Cole admits that BNSF's "gross revenue rate includes the fuel surcharge." Hicks Decl., Exh. "O" at pp. 64-65. Thus, BNSF's fuel surcharge cost information should be ordered produced so that SJVR "will have a fair opportunity to present its case at trial." *Paulsen, supra*, 168 F.R.D. at 288.

BNSF promised to back up its claims about losing money with "actual numbers" (Hicks Decl., Exh. "G" at pp. 37-38), but it broke that promise by producing SEC filings that don't show the "actual numbers", forcing SJVR to file this motion. As Judge Wanger explains, information re damages calculations must be produced both for trial and for settlement (*Sanchez,* 2006 WL 2884778 at *2), so even if BNSF does not have sufficient information to completely answer the discovery, it should be ordered to produce all the information in its possession and control, and to state under oath that it has no further responsive information. *Cullins, supra*, 108 F.R.D. at 177.

Finally, BNSF should also be ordered to confirm under oath that it has produced its other fuel sur-charge information which is responsive to SJVR's discovery at issue on this motion in its entirety. *Cullins, supra*, 108 F.R.D. at 177. As noted above, BNSF does not address this issue in its portions of this joint statement, so that requested relief is undisputed.

Dated: April 23, 2010

HICKS | PARK LLP

By: */s/ Allison H.W. Miller*
Allison H.W. Miller
Attorneys for Defendants and Counterclaimant

Dated: April 23, 2010

Briggs and Morgan, P.A.

By: s/Timothy R. Thornton
Timothy R. Thornton
Paul J. Hemming
Attorneys for Plaintiff
BNSF Railway Company, a Delaware Corporation

**CERTIFICATE OF SERVICE**

I hereby certify that on April 23, 2010, the attached document was filed electronically via the Court's Electronic Case Filing System (ECF). Notice of the filing will be sent to all counsel of record, and the parties may also access it via ECF.

*/s/ Penny L. Johnson*
Penny L. Johnson