# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BNSF RAILWAY COMPANY,<br><br>Plaintiff,<br><br>v.<br><br>SAN JOAQUIN VALLEY RAILROAD COMPANY, et al.,<br><br>Defendants. | CASE NO. 1:08-cv-01086-AWI-SMS<br><br>ORDER DENYING DEFENDANT'S MOTION FOR LEAVE TO FILE SUPPLEMENTAL COUNTERCLAIMS<br><br>(Doc. 179) |

Defendant San Joaquin Valley Railroad ("SJVR") seeks leave to amend its pleadings to incorporate two new tort claims for fraud and misrepresentation. Plaintiff BNSF Railway Company opposes the motion. Following a review of the parties' arguments, the record as a whole, and applicable law, this Court denies SJVR's motion.

**I.      Procedural and Factual Background**

In 1992, Tulare Valley Railroad ("TVRR") purchased certain railroad tracks that Plaintiff formerly owned and operated, and entered into a contract granting Plaintiff the right to set the rates to be paid to TVRR (through-rates) for handling through-routes of Plaintiff's rail cars on the

1

conveyed lines.[1] TVRR purchased the lines intending to demolish and sell for scrap many of the conveyed lines; it contracted with SJVR to conduct rail operations on those that remained in service.

Although Plaintiff's payments were initially passed through TVRR to its agent, SJVR, at some point thereafter, the through rates began to be paid directly from Plaintiff to SJVR. Plaintiff contends that this was accomplished through a 1994 letter agreement between Plaintiff and SJVR that was identified in the course of discovery. SJVR contends that the payments are governed solely by the 1992 contract. In any event, the parties do not dispute that TVRR conveyed the operating rail lines to SJVR late in the 1990's.

On July 25, 2008, Plaintiff filed its complaint in this action, seeking declaratory judgment regarding certain terms of its 1992 contract with TVRR and damages for SJVR's breach of the 1992 contract. Doc. 1. Counterclaiming for declaratory judgment and breach of contract damages, SJVR answered on September 2, 2008. Doc. 9. Plaintiff answered SJVR's counterclaims on September 19, 2008. Doc. 17.

With SJVR's consent, Plaintiff filed its First Amended Complaint on November 6, 2009. Docs. 83, 84, and 85. Among other things, the First Amended Complaint included allegations relating to subsequent agreements between the parties, including the 1994 letter agreement that fixed compensation due as through-rates to SJVR, superseding the provisions for reporting and periodic adjustment of through-rates that were part of the 1992 contract.

---

[1] "Through routes and rates are set to allow shippers to ship from one location to another without having to piece together multiple carriers' routes and rates. In other words, a single through route can span multiple carriers' lines but only one rate–the through rate–is quoted and charged for transportation services provided by two or more carriers." Doc. 85.

2

On November 20, 2009, Plaintiff deposed Mike Haeg, assistant vice-president for sales for the central region of RailAmerica, a holding company that has owned SJVR since 2002. TR 9.[2] In the 1990's, Haeg had been employed in similar positions by Kyle Railways, Inc., which owned SJVR until January 1997, and by States Rail, which owned SJVR until January 2002, when RailAmerica acquired States Rail. TR 8. Haeg admitted to uncertainty regarding Plaintiff's compensation to SJVR, candidly indicating that he was speculating regarding his understanding of the arrangement. TR 16-17. He could not remember the rate provision included in the 1992 contract. TR 77. Because the dispute between Plaintiff and RailAmerica was not Haeg's responsibility, Haeg did not "d[i]ve into it," although he understood the dispute to involve "rates and the contract." TR28. Haeg acknowledged the existence of multiple agreements between SJVR and Plaintiff. AR 32. When presented with Table 1 of an unspecified agreement designated as "exhibit 2," Haeg testified that it was the type of document that he would have reviewed in his role as vice president of marketing, although he did not remember seeing it before. TR 32-35.

Asked whether he recalled what freight weights were doing between 1991 and 2002, Haeg candidly dismissed any answer he might give as "speculation," explaining that he knew anecdotally that some rates went up and some went down during that time period. TR 35. He could not remember whether rates were generally going up or going down in California in that time period. TR 35. Haeg was not privy to Plaintiff's, or its predecessor's, through-rates, but had heard through "general talk in the industry" that rates had decreased. TR 37. He was

---

[2] The transcript of Haeg's deposition ("TR") is included in the record as Exhibit D to Doc. 116, filed February 12, 2010.

generally unfamiliar with published reports that addressed aggregate rate in the United States. TR 50-52. He was unaware of any rate increases between 1992 and 1997. Tr 61.

Haeg testified that, on one occasion, he approached Mike Galassi, Plaintiff's shortline marketing representative, requesting an increase in rates.[3] TR 38-39. Haeg was uncertain when the conversation occurred, suggesting "the late '90s, '98 or '99." TR 39. (Galassi left Plaintiff's employ in the early 2000's. TR 41.) Haeg testified:

> I recall a conversation with him and it's a – as I recall, it's a conversation I initiated asking for an increase in rates, and I can't recall if it was on the same conversation where he called me back or I called him back at a later date.
>
> But we did talk about–we did talk about rates in respect to raising our rates because I was asking for an increase in monies that were paid to us.
>
> And he said, There's been rate–There's been rate compression or rate decreases–I can't remember what term he used–and, therefore, I'm not going to–I'm not going to let you have an increase because we–we've actually had rate decreases.

TR 38-39.

According to Haeg, Galassi referred to the contract, saying if Plaintiff's rates went up, SJVR got an increase, and if rates went down, SJVR got a decrease. TR 40. Haeg did not recall any references to Table 1 or any other rate table. TR 90-91. Haeg was shocked, thinking Galassi "was threatening a decrease." TR 43. Haeg took no further action, since he had no way of verifying or disproving Galassi's representations. TR 48. Haeg did not recall whether SJVR's share of revenue increased, decreased, or remained the same after 1998. TR 43.

Pursuant to the scheduling order, discovery ended on November 30, 2009. Doc. 32. Also on November 30, 2009, SJVR answered the First Amended Complaint and filed supplemental

---

[3] Haeg generally recalled having other conversations with Plaintiff's employees and managers, but recalled clearly only his conversation with Galassi. TR 42, 67.

4

counterclaims. Doc. 91. Plaintiff answered the supplemental counterclaims on December 14, 2009. Doc. 96.

On January 11, 2010, based on Haeg's deposition testimony, SJVR filed a pleading entitled "First Amended Supplemental Counterclaim," which included two new tort claims, fraud and negligent misrepresentation. Doc. 100 (*stricken*). On January 25, 2010, Plaintiff moved to strike the supplemental counterclaims as violative of F.R.Civ.P. 15. Doc. 107. SJVR argued that, under the 2009 amendment to Rule 15, it was entitled to amend its counterclaims once as a matter of right. Doc. 114. The District Court disagreed, granting Plaintiff's motion and striking the new counterclaims in an order filed September 16, 2010. Doc. 178. Accordingly, on September 30, 2010, SJVR filed this motion for leave to amend the counterclaim to add the two new tort claims. Doc. 179.

**II.    Discussion**

    **A.    Leave to Amend (F.R.Civ.P. 15)**

Under F.R.C.P. 15(a)(2), the court should freely give leave to amend when justice requires. *See Foman v. Davis*, 371 U.S. 178, 182 (1962). This policy should "'be applied with extreme liberality.'" *Owens v. Kaiser Foundation Health Plan, Inc.*, 244 F.3d 708, 712 (9th Cir. 2001), *quoting Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990). "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits. In the absence of apparent or declared reason–such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendment previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.–the

leave sought should, as the rules require, be 'freely given.'" *Foman*, 371 U.S. at 182. A court must be guided by the purpose of Rule 15, which is facilitating decisions on their merits. *United States v. Webb*, 655 F.2d 977, 979 (9th Cir. 1981).

"[A] district court may deny leave to amend where there is any apparent or declared reason for doing so, including undue delay, undue prejudice to the opposing party or futility of the amendment." *Lockman Foundation v. Evangelical Alliance Mission*, 930 F.2d 764, 772 (9th Cir. 1991), *quoting Foman*, 371 U.S. at 182 (*internal quotation marks omitted*). "Not all of the factors merit equal consideration," however, "it is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Leave to amend is within the trial court's discretion. *Swanson v. U.S. Forest Service*, 87 F.3d 339, 343 (9th Cir. 1996); *United States v. County of San Diego*, 53 F.3d 965, 969 n. 6 (9th Cir.); *cert. denied*, 516 U.S. 867 (1995).

"[C]ontrolling the pace and scope of discovery, being a matter of case management rather than of the application of hard and fast rules, is also within the district judge's discretion." *Cowen v. Bank United of Texas, FSB*, 70 F.3d 937, 944 (7th Cir. 1995). When a motion to amend is made after the discovery period has closed, granting the amendment may require the court to re-open discovery. *Id.* In such cases, the nature of the requested amendment may rightly demand more or less judicial indulgence. *Id.* "A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend the complaint." *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) (*citation omitted*).

///

When a party moves to amend during the pendency of a summary judgment motion, a party "may be maneuvering desperately to stave off immediate dismissal of the case." *Id. See also Lamon v. Director, California Department of Corrections*, 2010 WL 3448593 at *7 (E.D. Cal. September 1, 2010) (No. CIV-06-0156-GEB-KJM); *Tate v. Board of Prison Terms*, 2010 WL 1980141 at *3 n. 4 (C.D.Cal. April 9, 2010), *report and recommendation adopted by* 2010 WL 1980149 (C.D.Cal. May 13, 2010) (No. CV 06-04505-AHM). When faced with this possibility, as the Court is here, courts reasonably may require stronger evidence that the amendment is appropriate. *Cowen*, 70 F.3d at 944. In the First Circuit, for example, if a party moves to amend after its opponent has moved for summary judgment, the party seeking to amend its pleadings must establish that the amendment is supported by "substantial and convincing evidence." *Id. See Resolution Trust Corp. v. Gold*, 30 F.3d 251, 253 (1st Cir. 1994); *Torres-Matos v. St. Lawrence Garment Co.*, 901 F.2d 1144, 1146 (1st Cir. 1990). *See also PowerAgent, Inc. v. U.S. District Court for the Northern District of California*, 210 F.3d 385 (table), 2000 WL 32073 (text) (9th Cir. January 14, 2000) (No. 99-70560) (observing the impropriety of granting a motion to amendment intended to stave off termination of a lawsuit).

The Ninth Circuit permits district courts to grant leave to amend after a summary judgment motion has been filed. *Ferris v. Santa Clara County*, 891 F.2d 715, 718-19 (9th Cir. 1989), *cert. denied*, 498 U.S. 850 (1990). Nonetheless, district courts in the Ninth Circuit should deny motions to amend when the moving party has failed to support its amendment through a "substantial showing." *See Oncology Therapeutics Network Connection v. Virginia Hematology Oncology PLLC*, 2006 WL 334532 at *13 (N.D. Cal. February 10, 2006) (No. C 05-3033 WDB); *Maldonado v. City of Oakland*, 2002 WL 826801 at *4 (N.D.Cal. April 29, 2002) (No. C 01

1970 MEJ). In *Oncology Therapeutics*, Magistrate Brazil suggested that a party's moving to amend during the pendency of a summary judgment motion may indicate undue delay, prejudice to the opposing party, or both.

Rule 15 imposes no time limit for amendment of pleadings. In the Ninth Circuit, a district court may not deny a motion for leave to amend solely based on the moving party's delay. *Hurn v. Retirement Fund Trust*, 648 F.2d 1252, 1254 (9th Cir. 1981). Denial requires a demonstration of "prejudice to the opposing party, bad faith by the moving party, or futility of amendment." *Bowles v. Reade*, 198 F.3d 752, 758 (9th Cir. 1999). Nonetheless, delay remains a relevant consideration to be weighed in the determination of whether to grant a motion to amend. *Loehr v. Ventura County Community College District*, 743 F.2d 1310, 1320 (9th Cir. 1984). "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. International Association of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398 (9th Cir.), *cert. denied*, 479 U.S. 816, 479 U.S. 821 (1986).

If the proposed amendment is insufficient in law and would be a futile act, it is proper to deny leave to amend. *Baker v. Pacific Far East Lines, Inc.*, 451 F.Supp. 84, 89 (N.D.Cal. 1978). "A motion for leave to amend may be denied if it appears to be futile or legally insufficient." *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988). Futility alone can justify denial of a motion for leave to amend. *Nunes v. Ashcroft*, 375 F.3d 810, 813 (9th Cir. 2004), *cert. denied*, 543 U.S. 1188 (2005). *See also Gabrielson v. Montgomery Ward & Co*, 785 F.2d 762, 766 (9th Cir. 1986) (opining that a motion to amend should not be granted when the amendment could be defeated on summary judgment).

B.    **Sufficiency of Pleadings (F.R.Civ.P. 8 and 9)**

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to this action. *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 512 (2002).  A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512. Detailed factual allegations are not required, but "[t]hreadbare recitals of the elements of the cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S.Ct. 1937, 1949 (2009), *citing Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). *See also Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985); *In re Worlds of Wonder Securities Litigation*, 694 F.Supp. 1427, 1433 (N.D. Cal. 1988); *Hokama v. E.F.Hutton & Co., Inc.*, 566 F.Supp. 636, 645-46 (C.D. Cal. 1983).

Although accepted as true, "[f]actual allegations must be [sufficient] to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555 (*citations omitted*).  A claimant must set forth "the grounds of his entitlement to relief," which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action." *Id.* at 555-56 (*internal quotation marks and citations omitted*). To adequately state a claim, a party must set forth the legal and factual basis of its claim.  A claimant must set forth sufficient factual matter accepted as true, to 'state a claim that is plausible on its face.'" *Iqbal*, 129 S.Ct. at 1949, *quoting Twombly*, 550 U.S. at 555.  While factual allegations are accepted as true, legal conclusions are not. *Iqbal*, 129 S.Ct. at 1949.

///

In addition, when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." F.R.Civ.P. 9(b). In the Ninth Circuit, the rule is interpreted to require the party to plead "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Schreiber Distributing Co. v. Serv-Well Furniture Co., Inc.*, 806 F.2d 1393, 1400-01 (9th Cir. 1986). "[M]ere recitation of the content of the alleged misrepresentations and the context in which they were made is [not] sufficient to satisfy Rule 9(b)." *Comwest, Inc. v. American Operator Services, Inc.*, 765 F.Supp. 1467, 1470-71 (C.D. Cal. 1991). The pleading party must identify the allegedly fraudulent circumstances that sufficiently to allow the responding party to prepare an adequate answer. *Walling v. Beverly Enterprises*, 476 F.2d 393, 397 (9th Cir. 1973). The allegations must set forth the time, date, and specific content or nature of the fraudulent representations or omissions. *Miscellaneous Service Workers, Drivers & Helpers, Teamsters Local # 427 v. Philco-Ford Corp., WDL Division*, 661 F.2d 776, 782 (9th Cir. 1981).

### C.     SJVR's Claims Are Futile

SJVR's first additional counterclaim charges fraud. Under California law, the "elements of fraud are: (1) a misrepresentation (false representation, concealment, or nondisclosure); (2) knowledge of falsity (*scienter*); (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 990 (2004). To satisfy the requirements set forth in F.R.Civ.P. 9(b), SJVR must plead each of the elements of fraud with particularity. *Conrad v. Bank of America*, 45 Cal.App.4th 133, 156 (1996). This means that SJVR must allege particular facts that explain the circumstances of the fraud including time, place, persons, statements made, and an explanation of why each statement

is false or misleading.  *Baggett v. Hewlett-Packard Co.*, 582 F.Supp.2d 1261, 1265 (C.D. Cal. 2007).  "The absence of any one of these required elements will preclude recovery."  *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal.App.3d 1324, 1332 (1986).

SJVR must plead and prove that Plaintiff intended to induce SJVR to act to its detriment in reliance on the false representation.  *Conrad*, 45 Cal.App.4th at 156.  Because Plaintiff is a corporation, SJVR must "allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, what they wrote or said, and when it was said or written."  *Tarmann v. State Mutual Auto. Ins. Co.*, 2 Cal.App.4th 153, 157 (1991).  The allegations must give Plaintiff specific notice of the alleged fraud sufficient to enable it to defend against the charge specifically and not simply to be able to protest that it has done nothing wrong.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

In a case alleging mortgage fraud, for example, the plaintiffs sufficiently stated their fraud claim by identifying "a specific individual (Defendant Niraj Maharaj), specific misrepresentations (that [the d]efendants would finance the entire project for 75% of the appraised value and that condominium financing would be available a week after the execution of the loans on the commercial plaza and the off-site developments), an exact date on which the alleged misrepresentations were made (September 12, 2007), an intent to defraud (that [the d]efendants had no intention of delivering on the third loan but wanted to obtain fees, commissions, and the right to seize property under the first two loans), justifiable reliance ([the p]laintiffs obtained financing and incurred substantial design and construction costs based on Defendant Maharaj's misrepresentations), and damages (costs and lost profits)."  *Errico v.*

///

*Pacific Capital Bank, N.A.*, ___ F.Supp.2d ___, 2010 WL 4699394 at *12 (N.D. Cal. November 9, 2010) (No. 09-CV-04072-LHK).

In contrast, SJVR fails to set forth the required allegations of time, place, persons, statements made, and an explanation of why each statement is false or misleading. It does no more than generally contend, in paragraph 42, that BNSF affirmatively misrepresented rate information. Doc 100. Its only specific allegations appear in paragraph 43:

> For example, in or about the 1998 to 2001 time frame, BNSF through its officer and managing agent Mike Galassi represented to SJVR through its officer and managing agent Mike Haeg that the applicable BNSF rates had been subject to decreases, when that was not true, in response to Mr. Haeg's request for a rate increase for SJVR under the Contract. Upon information and belief, Mr. Galassi's representation was false in that the applicable rates had in fact substantially increased, and Mr. Galassi knew such representation was false at the time he made it, and he intended to mislead SJVR and have it rely on such representation. Mr. Haeg reasonably believed Mr. Galassi's misrepresentation, and as a proximate result thereof, he did not pursue asking for an increase in BNSF's payment obligations to SJVR at that time under the Contract in reasonable reliance upon such representation, even though SJVR was entitled to such an increase.

Doc. 100.

SJVR alleges that, by "information and belief," Galassi falsely represented that rates had increased. A claim based on information and belief is "fundamentally defective." *Comwest*, 765 F.Supp. at 1471. An allegation based on information and belief can only satisfy Rule 9(b)'s particularity requirement by setting for the facts on which the information and belief are founded. *Worlds of Wonder*, 694 F.Supp. at 1432-33. *See also Laron, Inc. v. Construction Resource Services, LLC*, 2007 WL 1958732 at * 5 (D. Ariz. July 2, 2007) (No. CV-07-01510PCT-NVW) (""[T]he Complaint does not comply with Rule 9(b) because it makes allegations on information and belief without setting forth the facts on which the belief is founded.").

12

In *Comwest*, for example, the plaintiff alleged that the defendants misrepresented the actual and projected rates of usage of, and revenue from, telephones that subscribed to a defendant's service, but failed to allege the accurate revenues for each telephone or any other evidence that would establish that the defendants' representations were false when they were made. 765 F.Supp. at 1471.

"Given that allegations of fraud are particularly injurious to business and professional reputations, a fraud claim may withstand a Rule 9(b) challenge only if it states 'the manner in which [the alleged misrepresentations] are false and the facts that support an inference of fraud by each defendant.'" *Comwest*, 765 F.Supp. at 1471, *quoting McFarland v. Memorex Corp.*, 493 F.Supp. 631, 639 (N.D.Cal. 1980). SJVR fails to plead its fraud claim with the specificity required by Rules 8 and 9. Accordingly, granting leave to amend the counter-claim to include the fraud claim is inappropriate.

Although the elements of a cause of action for fraud and a cause of action for negligent misrepresentation are similar, the state of mind requirements differ. Negligent misrepresentation "sounds in fraud" and is also subject to F.R.Civ.P.'s heightened pleading standard. *Errico*, 2010 WL 4699394 at *13. Negligent misrepresentation differs from fraud in that it does not require "intent to deceive or defraud," but only an "assertion, as a fact, of that which is not true, by one who has no reasonable ground for believing it to be true" (Cal. Civ. Code §1710(2)), or a "positive assertion, in a manner not warranted by the information of the person making it, of that which is not true, though he believes it to be true" (Cal. Civ. Code § 1572(2)). *Oakland Raiders v. Oakland-Alameda County Coliseum, Inc.*, 144 Cal.App.4th 1175, 1184 (2006). If a party alleges sufficient facts to establish a fraud claim, it also alleges sufficient facts to establish a

negligent misrepresentation claim. *Errico*, 2010 WL 4699394 at *13. Having failed to specifically allege facts supporting its fraud claim, SJVR also fails to specifically allege facts supporting its claim for negligent representation. Accordingly, granting leave to amend the counter-claims to include a claim for negligent misrepresentation is also inappropriate.

### III. Conclusion and Order

Because SJVR failed to allege its fraud and misrepresentation claims with sufficient specificity, granting leave to amend would be inappropriate. Accordingly, SJVR's motion for leave to amend its counterclaims to include supplemental tort claims for fraud and negligent misrepresentation is hereby DENIED.

IT IS SO ORDERED.

**Dated:   December 14, 2010**               /s/ Sandra M. Snyder
                                             UNITED STATES MAGISTRATE JUDGE