1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IN THE UNITED STATES DISTRICT COURT FOR THE

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BNSF RAILWAY COMPANY, a Delaware Corporation, | ) ) ) CV F 08 - 1086 AWI SMS |
| Plaintiff, | ) ) MEMORANDUM OPINION AND ORDER ON |
| v. | ) DEFENDANT'S MOTION FOR ) RECONSIDERATION OF |
| SAN JOAQUIN VALLEY RAILROAD COMPANY, a California Corporation, and TULARE VALLEY RAILROAD COMPANY, a Nevada Corporation, | ) COURT'S ORDER OF APRIL ) 18, 2012 ) ) Doc. # 235 ) |
| Defendants. | ) ) |

On April 18, 2012, the court issued a Memorandum Opinion and Order on Cross-Motions for Summary Judgment or Summary Adjudication (hereinafter, the "April 18 Order"). Doc. # 231. The court's April 18 Order granted summary judgment as to each of the claims for relief of plaintiff Burlington Northern Santa Fe Rail Road ("Plaintiff" or "BNSF") and correspondingly denied claims for relief alleged by defendant and cross-complainant San Joaquin Valley Rail Road ("Defendant" or "SJVR"). The court directed the parties to notify the court as to any remaining issues not settled by the cross-motions for summary judgment or to move for entry of judgment if there were no remaining issues. On May 3, 2012, Defendant moved for reconsideration of the court's April 18 Order. Doc. # 235. Plaintiff filed its opposition on May 21, 2012, and Defendant filed its reply on May 29, 2012. The court also notes Plaintiff BNSF filed an objection to Defendant's proffer of

evidence submitted in conjunction with their motion for reconsideration.

## LEGAL STANDARD

Rule 60(b) permits a district court to relieve a party from a final order or judgment on grounds of:   "(1) mistake, inadvertence, surprise, or excusable neglect; (3) fraud . . . of an adverse party, . . . or (6) any other reason justifying relief from the operation of the judgment."  The motion for reconsideration must be made within a reasonable time, in any event "not more than one year after the judgment, order, or proceeding was entered or taken." Id. Motions to reconsider are committed to the discretion of the trial court. Combs v. Nick Garin Trucking, 825 F.2d 437, 441 (D.C.Cir. 1987); Rodgers v. Watt, 722 F.2d 456, 460 (9th Cir. 1983) (en banc).  To succeed, a party must set forth facts or law of a strongly convincing nature to induce the court to reverse its prior decision.  See, e.g., Kern-Tulare Water Dist. v. City of Bakersfield, 634 F.Supp. 656, 665 (E.D.Cal. 1986), aff'd in part and rev'd in part on other grounds, 828 F.2d 514 (9th Cir. 1987), cert. denied, 486 U.S. 1015, 108 S.Ct. 1752, 100 L.Ed.2d 214 (1988).  The Ninth Circuit has stated that "[c]lause 60(b)(6) is residual and 'must be read as being exclusive of the preceding clauses.'"  LaFarge Conseils et Etudes, S.A. v. Kaiser Cement, 791 F.2d 1334, 1338 (9th Cir. 1986), quoting Corex Corp. v. United States, 638 F.2d 119 (9th Cir. 1981).  Accordingly, "the clause is reserved for 'extraordinary circumstances.'"  Id.  See Catholic Soc. Servs. V. Ashcroft, (No. CIV S-86-1343 LKK), 2002 U.S. Dist. LEXIS 19194, *57, n. 18 (E.D. Cal. July 25, 2002) ("Generally speaking, before reconsideration may be granted, there must be a change in the controlling law, the need to correct a clear error, or the need to prevent manifest injustice.").

## DISCUSSION

Defendant requests reconsideration based on four grounds.  First, and most importantly, Defendant contends the court erred by making the factual determination that "Division of Revenue" as used in the 1992 Sale Agreement is the same as or synonymous with the term "switching absorption charges" as used in the 1994 Agreement.  With that as background, Defendant contends that the court failed to interpret the 1992 and 1994 contracts according to the appropriate rules of construction.  Defendant also contends that the court's

1   finding that "subject of the contracts are ambiguous" prevents an award of summary

2   judgment because a material issue of fact remains unresolved.  Finally, Defendant contends

3   the court, having misapplied the rules of contractual interpretation, should reconsider its

4   application of estoppel to bar Defendant's claim of breach of the 1992 Agreement.  The court

5   will consider each contention in turn.

6   **I. Division of Revenue and Switching Absorption Fees**

7            In the April 18 Order, the court discussed the terms "General Traffic Divisions" as

8   used in Table 1 of the 1992 Agreement and "Switching Absorption Rates" as used in Table 1

9   of the 1994 Agreement.  See Doc. # 231 at 12.  Based on a reading of the agreements and the

10  presentation and contents of the two Tables, the court concluded "the "Switching Absorption

11  Rates" paid by BNSF pursuant to the 1994 Table 1 represent payment for the same services

12  that were paid under Table 1 of the 1992 Agreement."  Id. at 12:16-18.  Defendant contends

13  that this finding by the court is (1) pivotal, and (2) made without the benefit of evidence or

14  argument.  Defendant contends that its silence on the issue was a result of an unawareness

15  that the court would take it upon itself to make that finding and that if given notice of the

16  court's intent it would have provided evidence to show that:

17           Under a division of rate set setting method one railroad carrier pays another
             railroad a stated portion or percentage of the carrier's through-rate.  Consistent
18           with a division of revenue rate method, the initial rates set out in 1992 Table 1
             were to be automatically adjusted to maintain the agreed division of revenues.
19           On the other hand, under a switch absorption rate setting provision the rates
             listed on the attached Table 1 represent the "*maximum*" rate or amount that the
20           Class 1 carrier (BNSF) will "absorb" into (or pay out of) its through rates.

21  Doc.# 237 at 7n. 2 (citing Frangler Decl. ¶¶ 11-14; Shelfbine Decl. ¶¶ 4-5.

22           The court has two observations.  First, Defendant's contentions regarding the

23  meanings of the terms "division of revenues" and "switching absorption" fail to convey to the

24  court any sense of why the distinction is anything more than semantic.  The court concluded

25  that Table 1 of the 1992 Agreement was the schedule for payment by BNSF to TVRR for the

26  same services that are paid to SJVR under the 1994 Agreement.  That continues to be the

27  court's conclusion notwithstanding any technical differences between the two terms.

28           Second, Defendant has failed to explain how the fact that the two terms are

technically different methods of compensation advances Defendant's contention that it suffered manifest injustice as a consequence of the court's determination that the terms were essentially synonymous.  Presuming for the sake of discussion that "switching absorption rates" are different from "division of revenue rates" in some important respect, how does manifest injustice result?  SJVR was not signatory to the 1992 agreement between BNSF's predecessor and TVRR but was signatory to the 1994 agreement between BNSF's predecessor and SJVR.  That means – presuming the validity of Defendant's contentions regarding the different meanings of the terms – that SJVR signed onto an agreement whereby they are to be paid according to a scheme that was more completely removed from the agreement by which TVRR agreed to be paid for its short-haul services than the court presumed.

It bears emphasizing at this point that the court's April 18 Order addressed the two legal theories by which SJVR could have stated a claim against BNSF for the alleged failure to report through-rate changes and to correct the division of revenues accordingly.  The first theory is that SJVR had rights under the 1992 Agreement from the time it began providing short haul services until it purchased TVRR's rights in 1999 and was therefore entitled to damages arising from BNSF's failure to disclose rate changes or adjust divisions of revenue.[1] The court determined SJVR did not acquire rights under the 1992 Agreement prior to 1999. The question upon Defendant's motion for reconsideration then becomes, if SJVR agreed in 1994 to a completely different basis for computing what it was owed for short haul services than was provided for by the 1992 Agreement, how does that make a difference in the court's analysis?  Defendant does not explain how the distinction, if any, between the definitions of "switching absorption rates" and "division of revenues rates" makes a difference in the court's analysis of SJVR's rights, or lack thereof, under the 1992 Agreement.  Even if the

---

[1]   The second legal theory the court addressed was whether, after acquiring rights under the 1992 Agreement by purchase of those rights from TVRR, SJVR was equitably estopped from claiming damages for violation of those rights in 2008 after carrying on business between 1999 and 2008 as if there were no violation of the agreement.  The court will address this second legal theory *infra*.

1   court did err in its conclusion that the terms were functionally synonymous, Defendant has

2   the burden to show that manifest injustice resulted because the court's analysis would have

3   been different.  Defendant has failed to carry this burden.

4   **II. Summary Judgment and Factual Ambiguity**

5        Defendant next contends that the court erred by granting summary judgment after

6   finding that Paragraph 31 of the 1992 Agreement created "[a]t best, from SJVR's standpoint"

7   a factual ambiguity as to the intention of the parties with regard to whether reporting yearly

8   changes in through rates and adjusting Table 1 of the 1992 Agreement accordingly is a

9   condition precedent to BNSF's authority to set through rates or pay the divisions of revenue

10  in Table 1.  Two considerations argue against a grant of reconsideration.

11       First, the court addressed the issue of a condition precedent (or condition subsequent,

12  as Defendant now argues) because it was raised by the parties, not because it was central to

13  the court's decision.  At the end of the section of the portion of the April 18 Order dealing

14  with the issue of condition precedent, the court made the observation that whether or not the

15  duty of BNSF pursuant to Paragraph 31 of the 1992 Agreement could be considered a

16  condition precedent, TVRR was the only entity to whom that duty was owed.  The court

17  further observed that, since the 1994 Agreement became the agreement by which SJVR was

18  paid directly by BNSF for 100% of the switching absorption fees set forth in the 1994 Table

19  1, and since the 1994 Agreement did not reference the 1992 Agreement nor incorporate any

20  language resembling the through rate reporting duty set forth in the 1992 Agreement, the

21  through rate reporting duties imposed by Paragraph 31 of the 1992 Agreement became

22  essentially superflous.  From this, the court determined that SJVR had no rights under the

23  1992 Agreement from the inception of the Agreement until the 1999 purchase of TVRR's

24  rights.  See Doc. # 231 at 16:18-17:25.  Perhaps the point could have been made more clearly

25  had the court simply declined to decide the issue of condition precedent on the ground of

26  mootness or immateriality; but the conclusion remains that whether or not the through rate

27  reporting duty under Paragraph 31 of the 1992 Agreement was a condition precedent (or

28  subsequent), SJVR had no recourse for the breach of that duty because the duty was not owed

1    to it.

2         Second, to the extent the court found there was any ambiguity created by the language

3    used in Paragraph 31 of the 1992 Agreement, there was no ambiguity with regard to the fact

4    that the parties had not *expressly* provided that the duty to report was a condition precedent

5    (or subsequent) to BNSF's rate-setting authority or to SJVR's duty to concur as to those rates

6    under the 1994 Agreement.  The court's inquiry into the conduct of the parties or into other

7    provisions of either of the 1994 agreements between BNSF and SJVR was intended to

8    support the contention that even if there was some ambiguity as to the intent of the parties at

9    the time of the Agreement, there was absolutely no admissible evidence to show that either

10   party intended the rate-reporting and adjusting provisions of Paragraph 31 to constitute a

11   condition precedent or subsequent to BNSF's right to set through rates and divisions of

12   revenue or switching absorption rates.  Thus, to the extent there was any ambiguity with

13   regard to the parties' intentions under the 1992 Agreement, the court concluded that

14   ambiguity was resolvable on the basis of undisputed material facts and trial on the issue is not

15   required.  Defendant has presented neither argument nor law sufficient to convince the court

16   that reconsideration is necessary.

17   **III.  Interpretation of Contract Language**

18        Defendant contends that the court failed to apply the governing rules of construction

19   of contracts with regard to the agreements at issue in this action.  To some extent,

20   Defendant's arguments regarding contract construction and interpretation rehash its argument

21   with regard to the court's determination that the rate-reporting and rate-adjusting duties

22   imposed by Paragraph 31 are or were conditions either precedent or subsequent to BNSF's

23   power to set through rates and TVRR's or SJVR's duty to concur in those rates.  The court

24   finds Defendant's arguments in this regard not persuasive for the reasons already discussed.

25        One contention by Defendant regarding contract interpretation does warrant particular

26   comment as it may help clarify the court's intention.  In contending that the court failed to

27   give effect to the 1992 Agreement as a whole when it determined that the through rate

28   reporting or adjusting duties of Paragraph 31 were not conditions precedent or subsequent to

6

BNSF's rate-setting authority, Defendant states "the Court's interpretation would render

Section 1(c) [of the 1992 Agreement recognizing TVRR's right to set rates] meaningless and

deprive SJVR of the expressly bargained for agreement regarding rate setting." Doc. # 237 at

10:11-14.  This contention indicates to the court that Defendant has misinterpreted the court's

May 18 Order by conflating the distinction between the rights that SJVR might have going

forward – which is not presently before the court – and what SJVR can *sue for* based on the

past conduct of the parties – which *is* before the court.  With regard to the rights SJVR may

have going forward, the court observed:

> Paragraph 16 of the 1992 Agreement sets forth what is essentially a
> no-waiver provisions as follows:
>
> > No waiver by either Buyer or Seller, or their respective
> > successors or assignees, or failure of either Buyer or Seller, or
> > their respective successors or assignees, to insist upon full and
> > complete performance by the other party to this agreement of
> > any of the obligations of that party in this agreement shall
> > constitute or effect a waiver or release of such party's right to
> > insist upon full and complete performance of such obligations
> > prior to, or following, the waiver or release, or such party's
> > right to insist upon full and complete performance of all other
> > obligations in this agreement.  This agreement shall be
> > amended or modified only by written agreement signed by the
> > parties hereto.
>
> Doc. # 41 at ¶ 16 (Sealed).
>
> > While the wording of Paragraph 16 is a little confusing, the court
> interprets the parties to have agreed to the proposition that future conduct
> would not erode the rights or obligations of either party under the 1992
> Agreement even if, for a time, the parties agreed informally to alter their
> conduct in one way or another.  What the court does *not* read into this
> provision is the parties' intent to create present causes of action based on past
> non-conforming conduct that would not be otherwise actionable either
> because such causes of action are time barred or because there was a
> reasonable understanding at the time that the conduct would not be held as
> actionable later.  In short, the court finds that the no-waiver provisions of
> Paragraph 16 preserve the parties rights to insist on performance that may
> have been formally or informally foregone for some period of time but does
> not create or preserve a cause of action where the cause of action would
> otherwise be subject to estoppel or time-limits.

Doc. # 231 at 18:19-19:11.

So far as the court is concerned, SJVR retains any and all rights it may have

"bargained for" in 1999 when it purchased TVRR's interests in the 1992 Agreement unless

and until either party pleads and proves otherwise.  The gist of the court's April 18 Order is that the parties to the 1992 Agreement had the untrammeled right to make other agreements and that where it is apparent that the parties did so and comported themselves in apparent accordance with other agreements, SJVR may not reach backward in 2008 to claim damages arising from breach of the 1992 Agreement.  This is not to say that SJVR may not seek to enforce rights in the 1992 Agreement that later agreements and the conduct of the parties indicate were suspended or foregone for a period of time.  It merely means that a cause of action will not lie where a party to any of the past agreements, or their successor, decides that past conduct that is in accordance with an agreement made at the time, and not objected to by any party at the time, is now objectionable.

To the extent Defendant alleges other instances of faulty construction of any of the agreements at issue in this case by the court, the court finds that these are simply differences of opinion between the court and Defendant and are not appropriate matters for reconsideration.  Such issues are properly raised on appeal.

**IV. Waiver and Estoppel**

Defendant requests the court reexamine its application of equitable estoppel in light of the other errors with regard to the interpretation of technical terms and erroneous construction of the agreements in this action.  Since the court has determined that reconsideration on the other issues raised by Defendant is not appropriate, the court correspondingly finds Defendant is not entitled to reconsideration of the court's determination regarding waiver and estoppel.  As previously discussed, the application of equitable estoppel in this action is at the core of the court's intention to leave the parties in possession of all rights to which they may have agreed on, at the same time, to prevent the unjust result of allowing the parties to craft alternative agreements and procedures only to have one party decide at some later time to reach back in time to claim damages.  The court is not persuaded this approach should be altered in favor of an outcome more favorable to Defendant.

THEREFORE, for the reasons stated above, Defendants motion for reconsideration is

8

hereby DENIED.  Either party may submit a statement of issues remaining for decision or, in the alternative, move for entry of judgment.


IT IS SO ORDERED.


Dated:    June 12, 2012    
                                          _____
                                          CHIEF UNITED STATES DISTRICT JUDGE